# No. 24-12809

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

IN RE UNITED STATES OF AMERICA,

RAMNARINE BOODOO,

*Plaintiff-Appellant*,

v.

LIFEPOINT HEALTH INC., RCHP – FLORENCE LLC, d.b.a. Shoals Hospital, PRIME HEALTHCARE SERVICES – GADSEN LLC, RIVER REGION PSYCHIATRY ASSOCIATES LLC, ALABAMA PSYCHIATRY LLC, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Northern District of Alabama, No. 2:21-cv-00569-ACA
Hon. Annemarie Carney Axon, U.S. District Judge

**DEFENDANT-APPELLEE PRIME HEALTHCARE SERVICES – GADSDEN LLC'S RESPONSE BRIEF**

Michael E. Paulhus
Alana K. Broe
KING & SPALDING LLP
1180 Peachtree Street NE
Suite 1600
Atlanta, GA 30309
(404) 572-4600

Ashley C. Parrish
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
(202) 737-0500
aparrish@kslaw.com

*Counsel for Prime Healthcare Services - Gadsden LLC*

June 9, 2025

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In accordance with 11th Cir. Rule 26.1-1(a), the following is a list of all known trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations with an interest in the outcome of this case or appeal:

1. Alabama Psychiatry, LLC – Defendant-Appellee
2. Axon, Annemarie Carney – United States District Court Judge
3. Barger, Jr., James Frederick – Attorney for Plaintiff-Appellant
4. Barrasso Usdin Kupperman Freeman & Sarver, LLC – Law Firm for Plaintiff- Appellant
5. Bass Berry & Sims, PLC – Law Firm for Defendant-Appellee RCHP - Florence LLC
6. Boodoo, Ramnarine – Plaintiff-Appellant
7. Broe, Alana K. – Attorney for Defendant-Appellee Prime Healthcare Services - Gadsden LLC
8. Bucy, Benjamin Patterson – Attorney for Plaintiff-Appellant
9. Chetta, Chloe Marie – Attorney for Plaintiff-Appellant
10. Curley, Matthew M. – Attorney for Defendant-Appellee RCHP - Florence LLC

11. Eason, John C. – Attorney for Defendant-Appellee RCHP - Florence LLC
12. Escalona, Prim F. – Attorney for United States of America
13. Frohsin & Barger LLC – Law Firm for Plaintiff-Appellant
14. Grizzle, Anna Minor – Attorney for Defendant-Appellee RCHP - Florence LLC
15. Guidry, Kansas – Prior Attorney for Plaintiff-Appellant
16. Jamie A. Johnston, PC – Law Firm for Defendants-Appellees Alabama Psychiatry LLC, River Region Psychiatry Associates LLC, and Shankar B. Yalamanchili
17. Johnson, Stephanie F. – Attorney for Defendant-Appellee Prime Healthcare Services - Gadsden LLC
18. Johnston, Jamie A. – Attorney for Defendants-Appellees Alabama Psychiatry LLC; River Region Psychiatry Associates LLC, and Shankar B. Yalamanchili
19. Jones Walker, LLP – Law Firm for Defendant-Appellee Prime Healthcare Services - Gadsden LLC
20. Kamath, Mithun – Attorney for Plaintiff-Appellant

21. King & Spalding LLP – Law Firm for Defendant-Appellee Prime Healthcare Services - Gadsden LLC
22. Lee, Brandy M. – Attorney for Plaintiff-Appellant
23. Lee Law Firm LLC – Law Firm for Plaintiff-Appellant
24. Lifepoint Health Inc. – Corporate Parent of Defendant-Appellee RCHP – Florence, LLC
25. Long, III, Don B. – Attorney for United States of America
26. Martin, Daniel J. – Attorney for Defendant-Appellee Prime Healthcare Services - Gadsden LLC
27. Parrish, Ashley C. – Attorney for Defendant-Appellee Prime Healthcare Services - Gadsden LLC
28. Paulhus, Michael E. – Attorney for Defendant-Appellee Prime Healthcare Services - Gadsden LLC
29. Prime Healthcare Services - Gadsden, LLC d/b/a Riverview Regional Medical Center – Defendant-Appellee
30. Prime Healthcare Services Inc. – Parent company of Defendant-Appellee Prime Healthcare Services - Gadsden LLC
31. RCHP-Florence LLC d/b/a Shoals Hospital – Defendant-Appellee

32. Regional Care Hospital Partners, LLC – Parent Company of Defendant-Appellee RCHP-Florence, LLC
33. Richardson, Clinton – Prior Attorney for United States of America
34. River Region Psychiatry Associates, LLC – Defendant-Appellee
35. Steeg, Aaron M. – To-Be-Enrolled Attorney for Plaintiff-Appellant
36. United States of America
37. Walthall, James Elliott – Attorney for Plaintiff-Appellant
38. Wilkerson, Andrew D. – Plaintiff-Appellant
39. Yalamanchili, Shankar B. – Defendant-Appellee

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Prime Healthcare Services – Gadsden LLC certifies that it is a private, for-profit limited liability company. Prime Healthcare Services – Gadsden LLC is wholly owned by Prime Healthcare Services, Inc. Prime Healthcare Services – Gadsden LLC is not a publicly held corporation, and no publicly held company has 10% or greater ownership in Prime Healthcare Services – Gadsden LLC.

Date: June 9, 2025

*/s/ Ashley C. Parrish*

Michael E. Paulhus
Alana K. Broe
KING & SPALDING LLP
1180 Peachtree Street NE
Suite 1600
Atlanta, GA 30309
(404) 572-4600
mpaulhus@kslaw.com
abroe@kslaw.com

Ashley C. Parrish
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
(202) 737-0500
aparrish@kslaw.com

*Counsel for Prime Healthcare Services – Gadsden LLC*

## STATEMENT REGARDING ORAL ARGUMENT

Prime Healthcare Services – Gadsden LLC respectfully submits that oral argument is unnecessary. The issues presented in this appeal are straightforward, resolved by existing precedent, and adequately addressed in the parties' briefs. Nonetheless, if the Court wishes to hear oral argument, Prime Healthcare Services – Gadsden LLC would be pleased to attend and present argument.

# TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ..... C-1

STATEMENT REGARDING ORAL ARGUMENT ..... i

TABLE OF AUTHORITIES ..... iv

INTRODUCTION ..... 1

JURISDICTIONAL STATEMENT ..... 3

STATEMENT OF THE ISSUE ..... 10

STATEMENT OF THE CASE ..... 10

STANDARD OF REVIEW ..... 22

SUMMARY OF THE ARGUMENT ..... 25

ARGUMENT ..... 28

I. Relator has not pleaded a viable false claim theory because he has not identified the submission of any false claim ..... 29

A. The complaint does not adequately allege that false claims were submitted ..... 29

B. The complaint's allegations do not provide any indicia of reliability that claims were submitted ..... 33

II. Relator's new reliance on cost report data does not satisfy his pleading burden under Rule 9(b) ..... 37

A. The complaint's references to cost reports are not sufficient to identify the submission of a false claim ..... 38

B. Relator has not adequately pleaded a materially false certification ..... 42

III. Relator's other arguments are meritless ..... 46

CONCLUSION ..... 54

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*,
57 F.4th 791 (11th Cir. 2022) .......... 45

*Affordable Aerial Photography, Inc. v. Prop. Matters USA, LLC*,
108 F.4th 1358 (11th Cir. 2024) .......... 23

*Ain Jeem, Inc. v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule A*,
2024 WL 4338366 (11th Cir. Sept. 23, 2024) .......... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 23, 32

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 23, 44

*Carrel v. AIDS Healthcare Found., Inc.*,
898 F.3d 1267 (11th Cir. 2018) .......... 30, 33, 34, 35

*City of Jacksonville v. Jacksonville Hosp. Holdings, L.P.*,
82 F.4th 1031 (11th Cir. 2023) .......... 5, 6, 21

*Corsello v. Lincare, Inc.*,
428 F.3d 1008 (11th Cir. 2005) .......... *passim*

*Est. of Helmly v. Bethany Hospice & Palliative Care of Coastal Ga., LLC*,
853 F. App'x 496 (11th Cir. 2021) .......... 36, 39, 40

*Gose v. Native Am. Servs. Corp.*,
109 F.4th 1297 (11th Cir. 2024) .......... 51

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) .......... 5

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999) .......... 41

*Hastings v. Wilbur Smith Law Firm*,
2021 WL 3207320 (11th Cir. July 29, 2021) .......... 6

*Hopper v. Solvay Pharms., Inc.*,
588 F.3d 1318 (11th Cir. 2009) .......... 29

*Knox v. Butler*,
884 F.2d 849 (5th Cir. 1989) .......... 38

*Ledford v. Peeples*,
657 F.3d 1222 (11th Cir. 2011) .......... 39

*Lucas v. USAA Cas. Ins. Co.*,
716 F. App'x 866 (11th Cir. 2017) .......... 53

*Martinez v. Carnival Corp.*,
744 F.3d 1240 (11th Cir. 2014) .......... 4, 5

*Olhausen v. Arriva Med., LLC*,
124 F.4th 851 (11th Cir. 2024) .......... 48

*Patton v. Carnival Corp.*,
2024 WL 1886504 (11th Cir. Apr. 30, 2024) .......... 32

*Sachez v. Discount Rock & Sand, Inc.*,
84 F.4th 1283 (11th Cir. 2023) .......... 4, 6

*Selman v. Cobb Cnty. Sch. Dist.*,
449 F.3d 1320 (11th Cir. 2006) .......... 38

*Solis v. CitiMortgage, Inc.*,
700 F. App'x 965 (11th Cir. 2017) .......... 5

*Turner v. Williams*,
65 F.4th 564 (11th Cir. 2023) .......... 23

*United States ex rel. 84Partners, LLC v. Nuflo, Inc.*,
79 F.4th 1353 (11th Cir. 2023) .......... 22, 34, 48

*United States ex rel. Angelo v. Allstate Ins. Co.*,
106 F.4th 441 (6th Cir. 2024) .......... 51, 52

*United States ex rel. Atkins v. McInteer*,
470 F.3d 1350 (11th Cir. 2006) ........ 25, 46, 47

*United States ex rel. Chase v. HPC Healthcare, Inc.*,
723 F. App'x 783 (11th Cir. 2018) ........ 53

*United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*,
2001 WL 1867721 (N.D. Ga. May 16, 2001) ........ 47

*United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*,
290 F.3d 1301 (11th Cir. 2002) ........ *passim*

*United States ex rel. Godfrey v. KBR, Inc.*,
360 F. App'x 407 (4th Cir. 2010) ........ 51

*United States ex rel. Headen v. Adams & Assocs., Inc.*,
2017 WL 6017775 (N.D. Ala. Dec. 5, 2017) ........ 50

*United States ex rel. Hunt v. Cochise Consultancy, Inc.*,
2025 WL 863466 (N.D. Ala. Mar. 19, 2025) ........ 50

*United States ex rel.*
*Kasowitz Benson Torres LLP v. BASF Corp.*,
929 F.3d 721 (D.C. Cir. 2019) ........ 51

*United States ex rel. Marsteller v. Tilton*,
556 F. Supp. 3d 1291 (N.D. Ala. 2021) ........ 50

*United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*,
591 F. App'x 693 (11th Cir. 2014) ........ 49

*United States ex rel. Matheny v. Medco Health Sols., Inc.*,
671 F.3d 1217 (11th Cir. 2012) ........ 41, 42

*United States ex rel. Petras v. Simparel, Inc.*,
857 F.3d 497 (3d Cir. 2017) ........ 51

*United States ex rel. Phalp v. Lincare Holdings, Inc.*,
857 F. 3d 1148 (11th Cir. 2017) ........ 48

*United States ex rel. Potra v. Jacobson Cos.*,
2014 WL 1275501 (N.D. Ga. Mar. 27, 2014) ........ 51

*United States ex rel. Sanchez v. Lymphatx, Inc.*,
596 F.3d 1300 (11th Cir. 2010)....................34

*United States ex rel. Vigil v. Nelnet, Inc.*,
639 F.3d 791, 801 (8th Cir. 2011)....................51

*United States v. Bourseau*,
531 F.3d 1159 (9th Cir. 2008)....................41, 44

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
579 U.S. 176 (2016)....................43

*Urquilla-Diaz v. Kaplan Univ.*,
780 F.3d 1039 (11th Cir. 2015)....................53

*Vargas v. Lincare, Inc.*,
134 F.4th 1150 (11th Cir. 2025)....................*passim*

*Vencor Hosps., Inc. v. Standard Life & Accident Ins. Co.*,
279 F.3d 1306 (11th Cir. 2002)....................9

*Warren Tech., Inc. v. UL LLC*,
962 F.3d 1324 (11th Cir. 2020)....................32

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015)....................12

*Ziemba v. Cascade Int'l, Inc.*,
256 F.3d 1194 (11th Cir. 2001)....................43

## Statutes

28 U.S.C. § 2107(a) .......... 7

31 U.S.C. § 3729.......... 41

31 U.S.C. § 3729(a)(1)(A).......... *passim*

31 U.S.C. § 3729(a)(1)(B).......... 16, 47, 48, 49

31 U.S.C. § 3729(a)(1)(C).......... 17, 50

31 U.S.C. § 3729(a)(1)(G).......... 16, 42, 49

31 U.S.C. § 3729(b)(2)(A).......... 40

## Rules

Fed. R. App. P. 4 .......... *passim*

Fed. R. Civ. P. 8 .......... 23

Fed. R. Civ. P. 9 .......... *passim*

Fed. R. Civ. P. 10 .......... 39

Fed. R. Civ. P. 41 .......... *passim*

Fed. R. Civ. P. 79 .......... 4

Fed. R. Civ. P. 58
advisory committee's note to 2002 amendment.......... 7, 9

## Other Authorities

Qui Tam Compl.,
*United States ex rel. Boodoo v. Prime Healthcare Servs., Inc.* (*Boodoo I*), No. 2:19-cv-01952-RDP (N.D. Ala. Dec. 2, 2019), Dkt. 1 .......... 14

First Am. Qui Tam Compl.,
*United States ex rel. Boodoo v. Prime Healthcare Servs., Inc.* (*Boodoo I*), No. 2:19-cv-01952-RDP (N.D. Ala. Dec. 19, 2019), Dkt. 2 .......... 14

Notice of Voluntary Dismissal,
*United States ex rel. Boodoo v. Prime Healthcare Servs., Inc.* (*Boodoo I*), No. 2:19-cv-01952-RDP (N.D. Ala. Dec. 15, 2020), Dkt. 31 .......... 14

Final Judgment,
*United States ex rel. Boodoo v. Ala. Psychiatry, LLC*, No. 2:23-cv-00460-ACA (N.D. Ala. June 11, 2024), Dkt. 40 .......... 21

Notice of Appeal,
*United States ex rel. Boodoo v. Ala. Psychiatry, LLC*, No. 2:23-cv-00460-ACA (N.D. Ala. July 2, 2024), Dkt. 41 .......... 21

Motion for Clarification,
*United States ex rel. Boodoo v. Ala. Psychiatry, LLC*, No. 2:23-cv-00460-ACA (N.D. Ala. Aug. 21, 2024), Dkt. 45 .......... 8

Medicare Claims Processing Manual ch. 25 .......... 31, 32

## INTRODUCTION

This appeal arises from Relator Dr. Ramnarine Boodoo's failed fourth attempt to plead viable claims against Prime Healthcare Services – Gadsden LLC d/b/a Riverview Regional Medical Center ("Riverview Hospital") under the False Claims Act ("FCA"). The appeal is untimely because Relator did not file a notice of appeal until more than a year after the district court dismissed his claims and ordered the case closed. Those actions terminated the litigation on the merits, and Relator has not satisfied any of the requirements for extending or reopening the time for appeal.

Even if the appeal were timely, the Court should affirm because Relator's claims fail on their merits. The government declined to intervene in this litigation, and Relator has never brought into focus any meritorious basis for concluding that Riverview Hospital submitted false claims to the government. As the district court recognized, because Relator's operative complaint fails to plead fraud with the particularity that Rule 9(b) requires, his FCA claims fail as a matter of law.

Before this Court, as in his briefing below, Relator takes an impermissible "shotgun" approach, failing to distinguish between the

different defendants. That approach cannot rescue his failure to plead any viable claim against Riverview Hospital. His complaint is inadequate because it includes no factual allegations sufficient to establish an actual violation of the FCA. His complaint's allegations instead reflect nothing more than his own speculation as to whether false claims might have been submitted, relying on publicly available data and hypothetical mathematical calculations. Relator is not a corporate insider, and he has pleaded no information establishing that actual claims were submitted to the government. The cost reports that he relies on, and emphasizes for the first time on appeal, are not even alleged to be requests for payment.

Relator wishes the law were different, urging this Court to excuse his pleading failures because he did not have access to any information necessary to plead viable claims. But this Court has been clear that Rule 9(b)'s pleading requirements must be enforced to shield against the burdens imposed by meritless, opportunistic, and speculative litigation. There is no reason to depart from that settled precedent in this case.

The district court properly dismissed the claims against Riverview Hospital with prejudice and without further leave to amend. If this Court reaches the merits of this untimely appeal, it should affirm.

## JURISDICTIONAL STATEMENT

The Court should dismiss this appeal for lack of jurisdiction because Relator did not file a timely appeal.

More than two years ago, on March 30, 2023, the district court dismissed all of Relator's claims against Riverview Hospital *with prejudice*, and it directed the clerk to terminate the litigation as to Riverview Hospital and other defendants. *See* Dkt. 70; *see also* Dkt. 69. With that dismissal, only two claims remained: (1) Dr. Wilkerson's retaliation claim against Shoals Hospital, and (2) Dr. Boodoo's retaliation claim against Alabama Psychiatry. Concluding that Dr. Boodoo's retaliation claim was not properly joined, the district court severed that claim and transferred it to a separate, standalone action, which was assigned its own case number. *See* Dkt. 76. A few months later in this case, Dr. Wilkerson and Shoals Hospital then filed a joint stipulation of voluntary dismissal with prejudice. In August 2023, with no claims remaining against any defendant, and with no objection from any party,

the district court issued a minute order administratively closing the case. *See* Dkt. 84.

The district court's order closing the case rendered its earlier dismissal order a final appealable order under Rule 41(a)(2) of the Federal Rules of Civil Procedure. *See Sachez v. Discount Rock & Sand, Inc.*, 84 F.4th 1283, 1291 (11th Cir. 2023) (finding that, even when a court's order was "expressly limited" to the Rule 41(a)(1) stipulated dismissal context, the order would be treated as a Rule 41(a)(2) order because it dismissed all claims with prejudice). The relevant docket entries — the court's order dismissing the claims with prejudice, and its later minute order directing that the case be closed — satisfied the requirements of both Rule 79(a) of the Federal Rules of Civil Procedure and Rule 4(a)(7) of the Federal Rules of Appellate Procedure as orders entered on the docket for purposes of appeal under Rule 4(a)(1) of the Federal Rules of Appellate Procedure. Moreover, the court's orders were final because they ended the litigation on the merits and on terms the court considered proper, no further proceedings were contemplated, and there was nothing left for the court to decide. *See Martinez v. Carnival Corp.*, 744 F.3d 1240, 1243–44 (11th Cir. 2014) (holding that

"administrative closure" functioned as a final order because it "effectively 'end[ed] the litigation on the merits'" (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86, 89 (2000)); *see also Solis v. CitiMortgage, Inc.*, 700 F. App'x 965, 968–69 (11th Cir. 2017) (per curiam) (direction to administratively close case qualified as a final order because it disposed of all claims and effectively ended the litigation on its merits).

In September 2023, less than a month after the district court ordered the case closed, this Court clarified in a different matter that a stipulation of voluntary dismissal pursuant to Rule 41(a)(1)(A)(ii) "requires the signature of a party that appeared but has already been removed from an action." *City of Jacksonville v. Jacksonville Hosp. Holdings, L.P.*, 82 F.4th 1031, 1038 (11th Cir. 2023). But the Court did not overturn the general rule that when a court administratively closes a case and effectively ends the litigation, its order is final for purposes of appeal. *See Martinez*, 744 F.2d at 1243–44. Nor did it change the principle that a court order that satisfies the requirements of Rule 41(a)(2), regardless of how it might be labeled, cures any deficiency in a Rule 41(a)(1) stipulation. *See Ain Jeem, Inc. v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule A*, 2024 WL 4338366, at

*1 (11th Cir. Sept. 23, 2024); *see also Sachez*, 84 F.4th at 1292; *compare City of Jacksonville*, 82 F.4th at 1039 n.6 (noting that stipulated dismissals followed by "orders by the district court granting the dismissal[s]" arguably could be treated as Rule 41(a)(2) dismissals").

Relator had no basis for waiting to file an appeal in this case (challenging the final order dismissing his claims as to Riverview Hospital). *See Hastings v. Wilbur Smith Law Firm*, 2021 WL 3207320, at *2 (11th Cir. July 29, 2021) (per curiam) ("We take a functional approach to finality, looking not to the form of the district court's order, but to its practical effect") (collecting authorities). This is not a situation, as in *City of Jacksonville*, where there could be any confusion over whether the action had ended or whether any party may have been unaware whether claims against other parties remained pending. *See City of Jacksonville v. Jacksonville Hosp. Holdings, L.P.*, No. 3:12-cv-00850 (M.D. Fla. July 21, 2021), Dkt. 380 (granting stipulated dismissal as to certain parties, but no other docketing entry closing case or otherwise indicating entire action had ended).

To the contrary, it was clear that as of August 2023, the district court had dismissed the action on terms that the court deemed proper

and there was nothing remaining for the court to decide. *See* Fed. R. Civ. P. 41(a)(2). Represented by the same counsel as Dr. Wilkerson, Relator was indisputably aware that his claims had been dismissed with prejudice and the case was closed. Moreover, under Rule 4(a), because the district court's orders dismissing all claims, terminating the defendants, and closing the case were entered on the docket, they took effect by operation of law. *See* Fed. R. App. P. 4(a)(7)(A)(ii) (order is final 150 days after entry on the docket); *see also* Fed. R. Civ. P. 58 advisory committee's note to 2002 amendment (noting that "definition of the entry of judgment must be applied with common sense").

If Relator intended to challenge the final judgment in this case, he needed to file an appeal within 30 days. *See* Fed. R. App. P. 4(a)(1)(A); *see also* 28 U.S.C. § 2107(a). Instead of timely appealing, however, Relator waited more than a year to appeal — filing his notice of appeal on August 30, 2024 — 519 days after the district court dismissed his claims against Riverview Hospital with prejudice, 371 days after the stipulated dismissal, and 371 days after the docket entry ordering the case closed. (Relator filed an appeal in the severed litigation relating to his retaliation claim on July 2, 2024.)

Before filing his appeal in this case, and long after the time for appeal had run, Relator returned to the district court and filed a motion for clarification in the separate, severed action. *See United States ex rel. Boodoo v. Ala. Psychiatry, LLC*, No. 2:23-cv-00460-ACA (N.D. Ala. Aug. 21, 2024), Dkt. 45. But he did not seek leave to extend the time for an appeal in this case. Nor did he make any showing necessary to reopen the time for appeal. *See* Fed. R. App. P. 4(a)(6). Nonetheless, in response to Relator's motion to clarify, the district court *sua sponte* concluded that it should not have closed this case because, under *City of Jacksonville*, the stipulation of dismissal was not signed by all parties. The district court vacated its earlier docket order closing the case, construed the earlier stipulation of dismissal as a motion to dismiss under Rule 41(a)(2), and on August 29, 2024, entered a new, separate Rule 41(a)(2) order. *See* Dkt. 85.

The effect of this order, however, did not purport to extend the time for filing an appeal. The district court was not asked to make any findings of "excusable neglect" or "good cause" that would be required to grant an extension. *See* Fed. R. App. P. 4(a)(5). Nor was it asked to make any of the findings necessary to reopen the time for filing an appeal. *See*

Fed. R. App. P. 4(a)(6); *see also Vencor Hosps., Inc. v. Standard Life & Accident Ins. Co.*, 279 F.3d 1306, 1311 (11th Cir. 2002) (noting that "Rule 4(a)(6) provides the *exclusive* method for extending a party's time to appeal for failure to receive actual notice that a judgment or order has been entered" (emphasis added)). It is clear that Relator would not be entitled to that relief, as (1) Relator had notice of the previous judgment dismissing his claims and the docket entry ordering the case closed, (2) Relator did not file his motion for clarification within 180 days, and (3) reopening the time for appeal would prejudice defendants, including Riverview Hospital. *See Vencor Hosps.*, 279 F.3d at 1311.

Riverview Hospital therefore respectfully submits that the district court's August 29, 2024 order could not re-start the time for filing an appeal. Even though the stipulated dismissal was not signed by all parties, that did not change the fact that the district court had previously dismissed the action on terms that it then deemed proper, and that its final judgment took effect no later than 150 days after its order closing the case appeared on the docket. *See* Fed. R. Civ. P. 58 advisory committee's note to 2002 amendment (explaining that 150-day rule was designed to ensure that "appeal time does not linger on indefinitely"). A

party should not be permitted to stand by waiting indefinitely after its claims have been dismissed and a case is closed and then try to revive an appeal when a final judgment in an entirely separate, severed action is entered years later.

Under these circumstances, the Court should reject Relator's unjustified delay and decline to exercise jurisdiction over his untimely appeal.

## STATEMENT OF THE ISSUE

Whether the district court properly dismissed Relator's False Claims Act counts against Riverview Hospital with prejudice because Relator failed to plead with particularity that false claims were submitted and instead relies on publicly available data and hypothetical payment calculations that fail to provide the who, what, where, when, and how of an actual false claim's submission to federal payors.

## STATEMENT OF THE CASE

### A. Overview of claims and parties

This declined *qui tam* action involves claims relating to contractual arrangements for the provision of psychiatric services at Riverview Hospital, a hospital in Gadsden, Alabama that offers inpatient psychiatric care and is wholly owned by Prime Healthcare Services, Inc.

("Prime"). *See* Dkt. 40 ¶ 14. Riverview Hospital has a contract with Alabama Psychiatry, which provides psychiatric coverage and medical direction services for Riverview Hospital's patients. *Id.* ¶¶ 10–12; *see also id.* ¶¶ 141–42. Alabama Psychiatry is the Alabama-based division of River Region Psychiatry Associates, LLC ("River Region"), an independent physician group owned by Dr. Shankar Yalamanchili. *Id.* ¶¶ 10–12.

Relator conflates these various parties, referring to Riverview Hospital, Alabama Psychiatry, River Region, and Dr. Yalamanchili "collectively" as the "Riverview Defendants." Op. Br. 9; *see also id.* at 10–12, 15, 21–24, 27, 37, 39–43. He similarly conflates Riverview Hospital and Prime, often referring simply to "Prime Healthcare" without distinguishing which alleged actions were taken by the hospital and which were taken by the parent company (which is not a party to this litigation).[1] *See* Op. Br.9, 24, 25, 27, 33, 35. That approach reflects a continuation of Relator's "shotgun pleading" approach that the district court properly rejected. *See* Dkt. 69 at 7–11 (timestamp pagination)

[1] Prime Healthcare was named as a defendant in Relator's prior complaints but was not named in the operative complaint and is not a party to this appeal.

(citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)). As set forth below, Rule 9(b) and this Court's precedent requires Relator to plead with particularity the elements of his FCA claims — including the who, what, where, when, and how of actual false claims being submitted to the government. Relator cannot circumvent that obligation by treating multiple distinct parties as a single entity. *See id.*

Relator's conflation of defendants is important because Riverview Hospital and the other defendants *do not* submit claims to federal payors together or even in the same manner. The record shows that hospitals, like Riverview Hospital, "submit claims for inpatient care … under Medicare Part A using an institutional claim format known as the ASC X12 837I, or where permissible, the hardcopy version Form CMS-1450." Dkt. 40 ¶ 68. "Healthcare providers," like Dr. Yalamanchili, bill claims separately, "submit[ting] 'professional fee' claims covered by Medicare Part B [using] the ASC X12 837 professional claim format, or where permissible[,] Form CMS 1500." *Id.* ¶ 74.

Relator is a licensed psychiatrist who was hired by Dr. Yalamanchili in June 2018 and employed by Alabama Psychiatry to

provide inpatient psychiatric services at Riverview Hospital until his termination in December 2019. *Id.* ¶¶ 15–16. Relator does not allege that he was involved in Riverview Hospital's billing and coding processes or that he was privy to inside information regarding actual claims submitted to federal payors — in fact, he acknowledges that he lacks such personal knowledge. *See* Op. Br. 3 (complaining that "the district court's application of Rule 9(b) essentially requires a relator to have access to the defendant's billing systems to bring a claim under the False Claims Act"). Relator's only involvement was as a clinician who admitted and treated patients and provided medical direction services pursuant to the contract between Riverview Hospital and Alabama Psychiatry. Dkt. 40 ¶¶ 15–17. Given this limited involvement, Relator is forced to speculate in trying to fabricate an FCA claim.

**B. Relator's multiple defective complaints.**

The operative complaint is Relator's fourth attempt to plead cognizable FCA claims.

Relator filed an initial *qui tam* complaint more than five years ago, alleging in conclusory fashion that Riverview Hospital and its parent company, Prime, violated the FCA. *See* Qui Tam Compl. at 16–20, *United*

*States ex rel. Boodoo v. Prime Healthcare Servs., Inc.* (*Boodoo I*), No. 2:19-cv-01952-RDP (N.D. Ala. Dec. 2, 2019), Dkt. 1. Several weeks later, Relator amended his complaint to add Dr. Yalamanchili as a defendant. *See* First Am. Qui Tam Compl. at 3, *Boodoo I* (N.D. Ala. Dec. 19, 2019), Dkt. 2. After the United States declined to intervene, the defendants moved to dismiss, and in response, Relator voluntarily dismissed his claims without prejudice. *See* Notice of Voluntary Dismissal, *Boodoo I* (N.D. Ala. Dec. 15, 2020), Dkt. 31.

A few months later, Relator filed his initial complaint in this action — Relator's third attempt to plead an FCA claim. His new complaint made substantially similar allegations against Riverview Hospital and related entities; added River Region and Alabama Psychiatry as defendants; and added a retaliation claim against Dr. Yalamanchili, River Region, and Alabama Psychiatry. *See* Dkt. 1. Relator was joined by a separate *qui tam* relator, Dr. Andrew D. Wilkerson, who pleaded fraud claims against Dr. Yalamanchili, River Region, Alabama Psychiatry, and two new defendants: (1) RCHP-Florence, LLC d/b/a Shoals Hospital, a hospital in Muscle Shoals, Alabama, and (2) LifePoint Health, Inc. *See id.* ¶¶ 13–14, 22–27, 183–

236. (Dr. Wilkerson's claims are not at issue in this appeal. *See* Dkt. 69; Dkt. 84.)

The United States again declined to intervene, and the defendants again moved to dismiss. *See* Dkt. 5; Dkt. 22; Dkt. 26; Dkt. 35. Rather than respond, Relator opted to amend his complaint once more, submitting the operative First Amended Complaint — his fourth attempt to plead FCA allegations against Riverview Hospital. *See* Dkt. 40.

Relator's operative allegations against Riverview Hospital largely track those of his earlier complaints. *See* Dkt. 69 at 4. Without distinguishing between defendants, Relator alleges that to maximize Medicare payments for inpatient psychiatry services, which are reimbursed on a "per-diem" basis, "Defendants" admitted and retained Medicare patients for inpatient psychiatric treatment at Riverview Hospital without using "written admission criteria" or providing "active treatment," as required by regulation. Dkt. 40 ¶¶ 2–4; *see also, e.g., id.* ¶¶ 140–80. Relator also alleges that Dr. Yalamanchili and his physician group were paid "illegal remuneration disguised as payments for medical director services" to boost the admission and retention of Medicare

patients at Riverview Hospital, thereby violating the federal Anti-Kickback Statute ("AKS"). *Id.* ¶¶ 1, 4–5; *see also, e.g., id.* ¶¶ 242–46.

Asserting that these supposed violations mean that any resulting Medicare claims were legally false, Relator provided what he contends are "representative examples of false claims being submitted." *Id.* ¶ 181. These "examples" are set forth in three charts included in his complaint. *Id.* ¶¶ 181–92.

The complaint asserts FCA claims against Riverview Hospital under four different theories: (1) presenting or causing to be presented false claims in violation of 31 U.S.C. § 3729(a)(1)(A) (Counts Two and Five[2]); (2) making or using false statements or records material to a false claim in violation of 31 U.S.C. § 3729(a)(1)(B) (Count Seven); (3) avoiding an obligation to pay money to the United States, or making or using false statements or records material to such an obligation, in violation of 31 U.S.C. § 3729(a)(1)(G) (Count Nine); and (4) conspiring to do all of the

[2] The complaint includes two "Count Fives" — one against Shoals Hospital, River Region, Alabama Psychiatry, and Dr. Yalamanchili, Dkt. 40 ¶¶ 237–41, and another against Riverview Hospital, River Region, Alabama Psychiatry, and Dr. Yalamanchili, *id.* ¶¶ 237–41. All references to "Count Five" in this brief refer to the Count against Riverview Hospital.

above in violation of 31 U.S.C. § 3729(a)(1)(C) (Count Eleven). Dkt. 40 ¶¶ 217–22, 242–46, 252–56, 259–60, 265–68.

### C. The district court's dismissal order

In March 2023, the district court dismissed Relator's claims against Riverview Hospital with prejudice. *See* Dkt. 69 at 41; Dkt. 70. In a 44-page opinion, the district court dismissed all but two claims: a retaliation claim that Relator asserted against Alabama Psychiatry (Count Thirteen), and a retaliation claim that Dr. Wilkerson asserted against Shoals Hospital (Count Twelve). Dkt. 69 at 40–41.

With respect to the claims against Riverview Hospital, the district court held that Relator had failed to plead "sufficient indicia of reliability to support the assertion" false claims were submitted. Dkt. 40 at 18; *see id.* at 19–26. The court acknowledged that the complaint included "a chart listing the dates of service," "a false claim amount billed for each date," and "a total amount claimed" for "three patients whom [Relator] believed were improperly admitted or received medically unnecessary care at the Riverview [Inpatient Psychiatric Facility ("IPF")]." *Id.* at 19–20 (quotation marks omitted). But that sample patient data was not enough to plausibly allege the requisite "who, what, where, when, and

how of any fraudulent submissions to the government." *Id.* at 20. Although the complaint "allege[d] generally that the Riverview IPF billing department submitted claims for the representative patients on claim format ASC X12 837[I], there [we]re no specific facts about the claims, what they were for, who submitted them, or how they arrived at the false claim amount billed." *Id.* (citation omitted); *see also id.* (concluding that "year[-]end billing data" did not sufficiently allege the submission of false claims because the complaint "contain[ed] no source or factual support for these sums, nor d[id] it link those amounts to the presentment of an actually false claim").

The district court also examined and rejected the complaint's other efforts to plead the submission of false claims. *Id.* at 21. Pointing to Relator's conclusory allegation that he "witnessed numerous instances in which [Riverview Hospital and] Dr. Yalamanchili … falsely billed Medicare," the court observed that there were "no facts showing how … [Relator] was in a position to witness such conduct" or "ha[d] access to or knowledge of [Riverview Hospital's] billing department or procedures." *Id.* at 21–22 (quotation marks omitted). There was also "nothing in the amended complaint" to support "any allegation that Dr. Yalamanchili

individually presented claims for payment." *Id.* at 21. Nor could Relator rely on allegations that "River Region bills for services of its physicians," the court reasoned, because Riverview Hospital's contract for psychiatric services was with *Alabama Psychiatry* (not its parent entity River Region), so "River Region could not have billed for any psychiatric services performed at [the hospital]." *Id.* at 23 (emphasis omitted).

Relator's failure to allege the submission of false claims with sufficient indicia of reliability was fatal to his FCA "presentment" claims (Counts Two and Five), his "make or use" claim (Count Seven), and his "reverse false claims" claim (Count Nine). *Id.* at 18–28. Moreover, because those claims failed as a matter of law, and because Relator "d[id] not plead with any specificity an agreement to submit an actual false claim or to get a false claim paid by the government," the court concluded that Relator's derivative conspiracy claim (Count Eleven) should be dismissed. *Id.* at 31. Upon dismissing all claims against Riverview Hospital with prejudice, the district court terminated Riverview Hospital as a defendant on March 30, 2023. *See* Dkt. 70.

For similar reasons, the district court dismissed nearly all of Relator's other claims and terminated Dr. Yalamanchili and River Region as defendants. *See* Dkt. 69 at 40–41.

The only two remaining claims were Relator's retaliation claim against Alabama Psychiatry and Dr. Wilkerson's retaliation claim against Shoals Hospital. The court concluded that these remaining "claims and parties [were] not properly joined under Federal Rules of Civil Procedure 18 and 20." *Id.* at 42. It therefore severed the two claims, transferred Relator's retaliation claim to a separate action, and directed the clerk to docket that claim under a new civil action number. *Id.*; *see* Dkt. 76 at 2. Only Dr. Wilkerson's retaliation claim against Shoals Hospital remained under the original case number (2:21-cv-00569). *See* Dkt. 76 at 2.

### D. Relator's untimely appeal

On August 25, 2023, Dr. Wilkerson and Shoals Hospital filed a joint stipulation of dismissal, which terminated all claims in the original case (No. 2:21-cv-00569) and therefore "conclud[ed] th[e] matter in its entirety." Dkt. 84 at 1. The district court ordered the case closed that same day, and that order was entered on the docket. *See* Aug. 25, 2023

Minute Order. That started the clock for Relator to file a notice of appeal, *see* Fed. R. App. P. 4(a), but he did not file a timely notice.

Relator instead allowed the time for appeal in this action to lapse and focused his attention on the severed retaliation claim against Alabama Psychiatry in the separate, standalone action. The district court entered summary judgment against Relator on that claim in June 2024, and Relator filed a notice of appeal in that separate action on July 2, 2024. *See* Final Judgment, *Ala. Psychiatry, LLC*, No. 2:23-cv-00460-ACA (N.D. Ala. June 11, 2024), Dkt. 40; Notice of Appeal, *Ala. Psychiatry, LLC*, No. 2:23-cv-00460-ACA (N.D. Ala. July 2, 2024), Dkt. 41.

The following month, the district court vacated its August 2023 order closing this case. *See* Dkt. 85 (entered Aug. 29, 2024). The court concluded that Dr. Wilkerson and Shoals Hospital's prior stipulation of dismissal "was not self-executing under Rule 41(a)(1)(A)(ii)" because it had not been "'signed by all parties who had appeared'" but later had "been removed from [the] action," *i.e.*, Riverview Hospital, Prime Healthcare Services, Inc., Dr. Yalamanchili, River Region, and Alabama Psychiatry. *Id.* at 3 (quoting Fed. R. Civ. P. 41(a)(1)(A)(ii)) (citing *City of Jacksonville*, 82 F.4th at 1038). The district court then "construe[d] Dr.

Wilkerson and [Shoals Hospital's] stipulation of dismissal as a motion to dismiss Dr. Wilkerson's only remaining claim under Rule 41(a)(2)," granted that motion, and dismissed the lone claim. Dkt. 85 at 4.

The district court did not, however, extend the time for filing an appeal or reopen the time for filing an appeal. Nor did its order change the fact that its earlier orders dismissing Relator's claims with prejudice against Riverview Hospital, terminating the action, and ordering the case closed were final many months before. *See* Fed. R. App. P. 4(a)(7) (defining entry for purposes of an appeal).

Relator filed a notice of appeal in this action on August 30, 2024, *see* Dkt. 86 — more than a year after the district court had ordered the case closed.

## STANDARD OF REVIEW

This Court reviews "de novo a district court's dismissal of a complaint for failure to state a claim … includ[ing] a dismissal for failure to allege fraud with the required particularity." *United States ex rel. 84Partners, LLC v. Nuflo, Inc.*, 79 F.4th 1353, 1359 (11th Cir. 2023). The Court is not limited to the district court's reasoning but may instead "affirm on any ground supported by the record, regardless of whether

that ground was relied upon or even considered below." *Affordable Aerial Photography, Inc. v. Prop. Matters USA, LLC*, 108 F.4th 1358, 1366 (11th Cir. 2024) (quotation marks omitted).

To survive a motion to dismiss, a complaint alleging FCA claims must satisfy both Rule 8 and Rule 9(b). Under Rule 8, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a complaint for compliance with Rule 8, the court construes the complaint's factual allegations in the light most favorable to the non-moving party. *Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023). But only well-pleaded allegations count — a court should not credit "'[t]hreadbare recitals of the elements of a cause of action,'" "conclusory statements of fact," or "legal conclusions." *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

Claims brought under the FCA sound in fraud and must also satisfy Rule 9(b)'s heightened pleading requirements. *See United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1308–10 (11th Cir. 2002). The complaint must allege "facts as to time, place, and substance of the defendant's alleged fraud, [and] the details of the defendant['s]

allegedly fraudulent acts, when they occurred, and who engaged in them." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam) (first alteration in original) (quoting *Clausen*, 290 F.3d at 1310). The complaint also must plead with particularity "an actual false claim for payment being made to the Government." *Clausen*, 290 F.3d at 1311 (emphasis omitted). Rule 9(b) thus requires a relator to "provide[] the 'who,' 'what,' 'where,' 'when,' and 'how'" of both "improper practices" *and* resulting "fraudulent submissions to the government." *Corsello*, 428 F.3d at 1014. The court cannot "make inferences about the submission of fraudulent claims because such an assumption would strip all meaning from Rule 9(b)'s requirements of specificity." *Id.* at 1013 (quotation marks omitted).

This heightened pleading standard serves an "important purpose": "alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of … fraudulent behavior." *Clausen*, 290 F.3d at 1310 (quotation marks omitted). "Rule 9(b) [thus] ensures that the relator's strong financial incentive to bring an FCA claim — the possibility of recovering between fifteen and thirty percent of a treble damages award — does not

precipitate the filing of frivolous suits." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006).

## SUMMARY OF THE ARGUMENT

This Court should dismiss this appeal for lack of jurisdiction. If the Court nonetheless decides to allow this appeal to proceed, it should affirm the district court's order dismissing Relator's claims with prejudice. The district court correctly determined that Relator's complaint did not adequately plead that Riverview Hospital submitted false claims for government reimbursement. To satisfy Rule 9(b)'s heightened pleading standard, Relator must plead with particularity that Riverview Hospital submitted false claims to the government for reimbursement. Relator has not met that burden.

1. Relator's complaint does not plead a viable claim under the FCA because it does not identify "the 'who,' 'what,' 'where,' 'when,' and 'how'" of both "improper practices" *and* resulting "fraudulent submissions to the government," *Corsello*, 428 F.3d at 1014, the *sine qua non* of an FCA violation. Relator points to a chart containing example patients D, E, and F, and argues that the information included on the chart is sufficient to assume that false claims may have been submitted. Op.

Br. 21–24. But his allegations rely on general and speculative assumptions, and do not contain plausible details of any claims actually submitted to Medicare. Indeed, Relator concedes that the charts and allegations regarding example patients D, E, and F "[do] not conclusively establish that such claims were actually submitted to the government." Op. Br. 30 (emphasis omitted).

Unable to identify false claims submitted to the government, Relator argues that his complaint should survive because he has alleged other "indicia of reliability" that claims were submitted. This Court has made clear that "indicia of reliability" are not a substitute for alleging the actual submission of a false claim. A relator must have allegations regarding a specific false claim *and* the necessary indicia of reliability to support the inference that the claim was submitted. Relator's allegations boil down to general assumptions that claims were submitted, and he has not presented plausible and particular allegations, as Rule 9(b) requires.

2. Relator articulates for the first time on appeal a false certification theory premised on Riverview Hospital's 2018 and 2019 Medicare cost reports. Relator faults the district court for ignoring this theory, but Relator's shotgun pleading approach made any false

certification claim premised on cost reports undiscernible. The complaint contains only a sterile recitation of the false certification elements, identifying four documents that *might* have been submitted to the government, and that *might* have been rendered false as a result of one of three theories pled in the alternative. Relator does not allege, for example, which specific aspect of which form was false; who made the certification; how the certifications misled the government; and what, if anything, Riverview Hospital obtained as a result of the certification. That is a far cry from the type of "particular" allegation of fraud that Rule 9(b) requires.

In any event, Relator's new theory cannot rescue his dismissed complaint. Cost reports do not qualify as claims for FCA purposes because they are not requests for government payment. As a result, even if the Court were to consider Relator's new theory on appeal, it does not provide the particularized allegations necessary to support a viable FCA claim.

3. Relator urges the Court to excuse his pleading failures and argues that his assortment of alternative theories — including his kickback theory, "cause to be presented" theory, reverse false claim

theory, and conspiracy theory — should survive even if he failed to plead the submission of any false claims. The Court should reject that request and follow its precedents, which have long emphasized the importance of enforcing Rule 9(b)'s requirements. All of Relator's alternative theories fail because he has not satisfied the requirement to plead with particularity the existence of any actual false claims submitted to the government.

The district court properly dismissed Relator's complaint under controlling Rule 8 and 9(b) case law. Moreover, the court acted well within its discretion to dismiss the complaint with prejudice because Relator failed to plead a viable claim for relief across four separate complaints. This Court should affirm.

## ARGUMENT

The Court should dismiss this appeal for the threshold reason that Relator did not file a timely notice of appeal. (*See* Jurisdictional Statement, above.) If the Court does not dismiss on jurisdictional grounds, it should affirm on the merits.

## I. Relator has not pleaded a viable false claim theory because he has not identified the submission of any false claim.

Relator fails to allege that Riverview Hospital submitted any false claims to the government for reimbursement. He instead attempts to satisfy the FCA's presentment element by focusing on three "example" patients (patients D, E, and F), and relying on hypothetical data. None of these attempts justify his failure to plead his claims with the particularity required to satisfy Rule 9(b).

### A. The complaint does not adequately allege that false claims were submitted.

"The FCA targets false claims — not regulatory violations, not internal misconduct, and not abstract theories untethered from government payment." *Vargas v. Lincare, Inc.*, 134 F.4th 1150, 1157 (11th Cir. 2025). It is thus well-established that "the submission of a false claim is the *sine qua non* of a False Claims Act violation." *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1328 (11th Cir. 2009) (quotation marks omitted). To survive a motion to dismiss, a "relator must allege the actual submission of a false claim because the False Claims Act does not create liability merely for a health care provider's disregard of government regulations or improper internal policies unless the provider asks the government to pay amounts it does not owe." *Carrel v. AIDS*

*Healthcare Found., Inc.*, 898 F.3d 1267, 1275 (11th Cir. 2018) (cleaned up).

To allege the submission of a false claim, a relator must provide sufficient detail regarding specific claims for reimbursement. It is not enough for an FCA relator to provide "the 'who,' 'what,' 'where,' 'when,' and 'how' of *improper practices*, but [fail] to allege the 'who,' 'what,' 'where,' 'when,' and 'how' of *fraudulent submissions to the government*." *Corsello*, 428 F.3d at 1014 (emphasis added). "The most direct way to satisfy that requirement is by identifying specific claims submitted to the government: invoices, billing records, reimbursement forms." *Vargas*, 134 F.4th at 1157.

Relator has not met this demanding standard and does not even purport to do so. He instead points to the example patients D, E, and F, and the charts in paragraphs 185 to 191 of his complaint, and urges the Court to assume that false claims must have been submitted. Op. Br. 21–24. But his allegations rely only on general and speculative assumptions. Relator concedes that the charts and allegations regarding example patients D, E, and F "[do] not conclusively establish that such claims were actually submitted to the government." Op. Br. 30 (emphasis omitted).

Relator's charts appear to be based on a hypothetical calculation of a possible reimbursement amount using Medicare's standard payment formula for inpatient psychiatric care — the Medicare IPF Prospective Payment System ("IPF PPS") — that Relator outlines in his complaint. *See* Dkt. 40 ¶¶ 44–46. But he provides no explanation for how he identified "amount[s] … billed," despite his concession that he had no access to the billing department. Op. Br. 34–35. His complaint includes no copies of bills, does not identify the codes billed, and does not purport to represent the total amount billed for any patient's encounter. Relator's examples are mere *assumed estimations* of daily per-diem amounts under the applicable Medicare payment system, and they do not plausibly represent actual billed claims or amounts paid. *See* Dkt. 69 at 21–22 (finding that the complaint does not plausibly allege that the government was asked to pay any false claim).

These deficiencies are unsurprising because claims under the IPF PPS are not submitted in the manner reflected in Relator's charts. Instead, claims must be submitted as *one single claim* containing revenue code detail for the beneficiary's entire IPF stay. *See* Medicare Claims Processing Manual ch. 25 § 75.3 ; *see also* Dkt. 40 ¶¶ 44–46 (citing the

Medicare Claims Processing Manual as relevant authority for how to bill IPF PPS encounters). Moreover, Medicare requires claims to be broken out by revenue code to account for actual costs incurred by the hospital in the patient encounter, rather than to list claims by date. *See* Medicare Claims Processing Manual ch. 25 § 75.4, FL 42; § 75.5, FL 46. For example, for a five-day patient encounter in the IPF unit, the claim form would list the revenue code for an IPF room charge with a quantity of "5," along with the revenue codes and quantities for any other services and charges incurred during the patient encounter.

In light of these standard requirements, Relator's patient example charts do not contain plausible details of any claims submitted to Medicare. This Court is not obligated to construe implausible allegations in favor of Relator. *Patton v. Carnival Corp.*, 2024 WL 1886504, at *2 (11th Cir. Apr. 30, 2024) (per curiam) (courts are "not required to credit conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts" (quoting *Warren Tech., Inc. v. UL LLC*, 962 F.3d 1324, 1328 (11th Cir. 2020)); *see also Iqbal*, 556 U.S. at 664.

Rule 9(b) is satisfied by actual claims data, not estimations of the value of potential claims. Relator has done no more than "allege[] simply and without any stated reason ... his *belief* that claims requesting illegal payments must have been submitted, were likely submitted, or should have been submitted." *Carrel*, 898 F.3d at 1275 (quoting *Clausen*, 290 F.3d at 1311) (emphasis added).

**B. The complaint's allegations do not provide any indicia of reliability that claims were submitted.**

Unable to identify the submission of any false claim, Relator attempts to satisfy the pleading standard by pointing to what he contends are other "indicia of reliability." Op. Br. 28–31. Relator asserts that his example patients provide the indicia of reliability to show when claims were submitted, who submitted the claims, and what amounts the claims were billed for. Op. Br. 33. Relator's position is contrary to law and, in any event, fails on its own terms.

"Indica of reliability" are not a substitute for alleging the actual submission of a false claim. A relator must provide allegations regarding a specific false claim *and* the necessary indicia of reliability to support the inference that the claim was submitted. *See Carrel*, 898 F.3d at 1276. As this Court has recognized, even if a relator has direct knowledge of a

defendant's billing (which this Relator does not), a relator still "must allege 'specific details' about false claims to establish 'the indicia of reliability necessary under Rule 9(b).'" *Id.* (quoting *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1302 (11th Cir. 2010) (per curiam)).

The submission of a false claim may not be inferred from the circumstances, or from general operations and standard practices. *Corsello,* 428 F.3d at 1013; *84Partners*, 79 F.4th at 1361. Even where the government has a general obligation to pay, and even when submitting claims was "standard operating procedure," the relator still must plead actual false claims with particularity. *84Partners*, 79 F.4th at 1362 (finding no allegations of an actual claim submitted, despite allegations that the U.S. Navy received and installed the allegedly defective parts and was obligated to pay for parts installed in submarines). Merely including examples of specific patients without identifying whether and how the government paid false claims for those patients is not enough.

In *Carrel*, for instance, the relators attempted to allege that claims were submitted by pointing to a spreadsheet that listed various patients, employees, test dates, other medical and referral information, and

information regarding potential funding for the patients from public healthcare programs. *Carrel,* 898 F.3d at 1270. This Court held that this information was "unpersuasiv[e]." *Id.* at 1278. Similarly, in *Atkins*, which is particularly instructive, a psychiatrist relator provided "particular patients, dates and corresponding medical records for services that he contend[ed] were not eligible for government reimbursement." 470 F.3d at 1359. But the relator had no role in billing and no personal knowledge of what claims were submitted. *Id.* This Court held that the complaint failed to establish a clear "link" between the alleged scheme and actual claims, and it upheld the dismissal under Rule 9(b). *Id.*

These cases and the principles they recognize are controlling here. Although Relator asserts that his example patients provide the indicia of reliability to show when claims were submitted, who submitted the claims, and what amounts the claims were billed for, *see* Op. Br. 33, he does not allege any of these facts. His complaint merely alleges that three patients with Medicare insurance received treatment at Riverview Hospital, and he then assumes that claims must have been submitted on the standard Medicare claim form at some unspecified time after discharge. *See* Dkt. 40 ¶¶ 181–95.

Relator's reliance on the individual patient examples thus amounts to general assumptions that could be made by anyone, not a corporate insider. For "who" and "where," Relator assumes that Riverview Hospital's billing department, directed by leadership, submitted bills from the location of their billing office. Op. Br. 33; *but cf. Est. of Helmly v. Bethany Hospice & Palliative Care of Coastal Ga., LLC*, 853 F. App'x 496, 501–02 (11th Cir. 2021) (per curiam) (holding allegations insufficient where relators reviewed government claims submissions in the defendant's electronic billing system and the complaint cited statements by at least five billing employees confirming bills were submitted).

For "when," Relator asserts only that the bills were submitted at some juncture after the patient was discharged from the facility, while admitting that he does not know the actual date the bills were submitted or paid by Medicare. Op. Br. 34–35; *see also Clausen*, 290 F.3d at 1311 ("conclusory statements that [Defendant] submitted [claims] for specified tests on the 'date of service or within a few days thereafter'" suffers from the defect of "a lack of specific information about the actual submission of claims to the Government").

As for "what" and "how," Relator suggests that the forms were submitted on the standard electronic claim form that Medicare requires hospitals to use to submit claims to Medicare. Op. Br. 34; *see Clausen*, 290 F.3d at 1312 (failing to satisfy Rule 9(b) where "[n]o policies about billing or even second-hand information about billing practices were described, other than to state that [standard electronic Medicare claim form] with medical test codes were used."). These general assumptions of a standard operating procedure do not provide indicia of reliability that actual false claims were submitted to the government.

This Court should affirm the district court's holding that "there are no allegations in the amended complaint of who, what, where, when, and how of any fraudulent submissions to the government." Dkt. 69 at 20.

## II. Relator's new reliance on cost report data does not satisfy his pleading burden under Rule 9(b).

For the first time on appeal, Relator relies on his limited allegations related to Riverview Hospital's cost reports and urges the Court to take judicial notice of a government website that provides cost report information. But Relator's complaint does not provide the source of the alleged data, and the Court should decline to take judicial notice of information not cited in the complaint and not presented to the district

court below. *See Selman v. Cobb Cnty. Sch. Dist.*, 449 F.3d 1320, 1332 (11th Cir. 2006) ("[W]e consider only evidence that was part of the record before the district court"); *see also Knox v. Butler*, 884 F.2d 849, 852 n.7 (5th Cir. 1989) (declining to take judicial notice on appeal of "evidence that was never presented to the district court"), *as amended on denial of reh'g* (Nov. 21, 1989). Even if the Court were to take judicial notice of the public cost report filing, however, that does not suffice as evidence of a claim submitted for reimbursement.

### A. The complaint's references to cost reports are not sufficient to identify the submission of a false claim.

Relator attempts to rely on the cost reports to support the indicia of reliability that individual claims for reimbursement were submitted. Those attempts fail for at least three reasons.

***First***, although Relator's complaint includes general statements that Riverview Hospital submitted cost reports that "falsely claimed reimbursement for the IPF services provided to" patients D, E, and F, *see* Dkt. 40 ¶¶ 186, 189, 192, he does not provide any particular allegations to support these general statements. He merely alleges in the alternative in Count Two that Riverview Hospital "caused the submission of false or fraudulent claims for payment or approval by causing false certifications

on forms required for payment of claims under federal healthcare programs," citing one of four standard forms submitted to Medicare by healthcare providers, including the Medicare cost reports. Dkt. 40 ¶¶ 218–19.

That is not sufficient. Relator does not articulate which statements, if any, on which of the four cited forms were rendered false by which of the three "fraudulent schemes" he alleges in Count Two. The rules of Civil Procedure require that "each claim founded on a separate transaction or occurrence ... must be stated in a separate count." Fed. R. Civ. P. 10(b). Relator's failure to comply renders his new theory defective. *See Vargas*, 134 F.4th at 1162 (Tjoflat, J. concurring) (condemning the at-issue complaint that "'lumps multiple claims together in one count' and forces courts to play detective rather than umpire" (quoting *Ledford v. Peeples*, 657 F.3d 1222, 1239 (11th Cir. 2011))).

***Second***, Relator's complaint relies on data extracted from cost reports submitted in 2018 and 2019 showing the volume of IPF payments that Riverview Hospital claimed each year. Dkt. 40 ¶¶ 193–94. But this Court has held that pleading aggregate Medicare data does not satisfy the FCA's submission element. *See Helmly*, 853 F. App'x at 502.

In *Helmly*, the relator attempted to lend indica of reliability to deficient allegations by citing, but not attaching, Medicare claims data to support an inference that the defendant submitted fraudulent claims to Medicare. *Id.* at 498. The Court held that this data was insufficient because "numerical probability is not an indicium of reliability." *Id.* at 502. So too here. The numerical figures that Relator cites do not establish with particularity that any false claims were actually submitted to the government.

***Third***, Relator argues that the recitation of purported data from 2018 and 2019 cost reports qualify themselves as claims submitted to the government. *See* Op. Br. 18–19. But he has failed to allege that the cost reports constituted actual requests for the government to pay money.

A claim for the purpose of the False Claims Act "means any request or demand ... for money or property[.]" 31 U.S.C. § 3729(b)(2)(A). The complaint merely provides what Relator contends are financial figures reported to the government describing amounts *already paid* by the government. Dkt. 40 at ¶¶ 193-124. Relator does not allege in his complaint that Riverview Hospital sought or received any additional funds in connection with its cost reports. The cost reports cited in the

complaint thus do not show any "request or demand for money or property." *Clausen*, 290 F.3d at 1307 n.7 (citing 31 U.S.C. § 3729); *see id.* at 1311 ("The False Claims Act at least requires the presence of a claim — a call upon the government fisc — for liability to attach." (quoting *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 785 (4th Cir. 1999))).

Relator relies on *United States v. Bourseau*, 531 F.3d 1159 (9th Cir. 2008), and *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1225 (11th Cir. 2012), in support of his position that cost reports are claims under the FCA. Neither case is on point; nor do they support the proposition for which Relator cites them.

In *Bourseau*, the government alleged that the actual numbers submitted on the Medicare cost reports were intentionally miscalculated to support a request for Medicare to pay more money to defendants. *Bourseau*, 531 F.3d at 1163. *Bourseau's* holding related only to a factually false and intentionally manipulated request for reimbursement. It does not extend to Relator's false certification theory premised on a cost report with no request for government payment.

*Matheny* is even farther afield, as it did not relate to cost reports. *Matheny* concerned a reverse false claims theory brought under § 3729(a)(1)(G) premised on a certification submitted by defendants to affirm compliance with the terms of a corporate integrity agreement. *Matheny*, 671 F.3d at 1220.

The district court properly held that Relator's cost report allegations "do not satisfy [Relator's] obligation under Rule 9(b) to plead specific facts plausibly showing the actual submission of a false claim." Dkt. 69 at 20-21.

### B. Relator has not adequately pleaded a materially false certification.

Even if this Court were to consider Riverview Hospital's submission of cost reports to be a "claim" for the purpose of 31 U.S.C. § 3729(a)(1)(A), Relator's theories premised on the cost reports are still insufficient. To satisfy Rule 9(b)'s requirements for a false certification claim, the complaint must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) [the] same, and (3) the content of such statements and the manner in which

they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). Moreover, the alleged false statement must be material. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 190 (2016).

Relator's complaint fails to satisfy any of these requirements, much less all of them. Relator identifies only threadbare recitals of various certifications in the complaint's legal background section, *see* Dkt. 40 ¶¶ 62–76, without connecting these certifications to the precise conduct that made any certification false. The only reference in the complaint to a false cost report is the allegation that a cost report falsely claimed reimbursement for the IPF services provided to patients D, E, and F. *Id.* at ¶¶ 186, 189, 192, 194. But Relator provides no reliable support for the assertion that services rendered to patients D, E, and F are reflected in the cost report data. *See Corsello*, 428 F.3d at 1013 (declining to "make inferences about the submission of fraudulent claims because such an assumption would 'strip[] all meaning from Rule 9(b)'s requirements of specificity.'" (quoting *Clausen*, 290 F.3d at 1312 n.21)). Relator also does not allege that Riverview Hospital obtained anything as a consequence

of including the claims in the cost report. *Cf. Bourseau,* 531 F.3d at 1163 (alleging defendants sought additional government payments through the alleged false representations in the cost report).

Relator's complaint also generally asserts that "Defendant Prime Healthcare Services–Gadsden, LLC caused the submission of false or fraudulent claims for payment or approval by causing false certifications on forms required for payment of claims under federal healthcare programs, including: Form CMS-1450, Form CMS-2552-10, Form CMS-855I." Dkt. 40 ¶ 219. That sterile recitation cannot serve as sufficient factual support for the claim itself. *See Twombly*, 550 U.S. at 555 & n.3 ("blanket assertion[s] of entitlement to relief" are insufficient, as are "labels and conclusions[] and a formulaic recitation of the elements of a cause of action"). Nowhere in the complaint does Relator identify with particularity which specific aspect of which form was false; who made the certification; how the certifications misled the government; and what, if anything, Riverview Hospital obtained as a result of the certification. That is a far cry from satisfying the strictures of Rule 9(b).

Relator asserts that the cost reports contained a false certification because they certified that services were provided in compliance with all

applicable laws and regulations when the services allegedly were not in fact compliant. Op. Br. 19–20. Relator did not develop or explain this false certification theory under 31 U.S.C. § 3729(a)(1)(A) with any particularity in briefing before the district court. Relator cannot add particularity to his pleadings on appeal. *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 799 n.2 (11th Cir. 2022) (en banc) (An appellant "cannot amend the complaint by arguments made in an appellate brief.").

If Relator's generalized assertions of public cost report data were enough to satisfy Rule 9(b)'s pleading standard, that would do away with the standard all together. Under Relator's theory, any person could pull publicly available cost report information from the internet and pair it with generalized assertions of underlying regulatory violations in the original claims (to which they have no access). That does not align with this Court's stated goals to prevent "opportunists" from filing "speculative lawsuits," and this Court should decline to lower the pleading bar as Relator requests. *See Vargas*, 134 F.4th at 1157.

## III. Relator's other arguments are meritless.

Relator asserts that this Court should excuse his failure to satisfy the presentment element because he "simply had no access to" the billing information and "[t]hat fact should not be held against" him. Op. Br. 35. He also contends that, even if he has not identified the submission of a false claim, his alternative theories of FCA liability are viable. The Court should reject both arguments.

This Court has weighed the costs and benefits of Rule 9(b)'s strict pleading standard on many occasions and it has consistently determined that it plays a necessary role in the *qui tam* enforcement system. As the Court has explained, "the FCA's bounty system may tempt opportunists to file speculative lawsuits, hoping to pressure settlements from businesses unwilling to endure protracted litigation. *Vargas*, 134 F.4th at 1157. In *Atkins*, for example, the relator was "a psychiatrist responsible for the provision of medical care, not a billing and coding administrator responsible for filing and submitting the defendants' claims for reimbursement." 470 F.3d at 1359. In affirming dismissal, the Court emphasized that "the public policies behind Rule 9(b), the FCA, and *qui tam* actions" necessitated the dismissal of relator's claims

because "'[t]he particularity requirement of Rule 9 is a nullity if [the relator] gets a ticket to the discovery process without identifying a single claim.'" *Id.* at 1359–60 (quoting *United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 2001 WL 1867721, at *1 (N.D. Ga. May 16, 2001)). Relator here is almost identically situated to the psychiatrist in *Atkins*. He should not be permitted to advance to discovery based on speculation alone.

Nor do any of his alternative theories provide a viable basis for reversing the district court. Each of these theories fails for the same underlying reason — Relator has no information of any false claim that was submitted for payment, and his speculative allegations are insufficient to justify allowing litigation to continue.

***Relator has not adequately pleaded a "cause to be presented" claim.*** Relator's claim under 31 U.S.C. § 3729(a)(1)(B) is premised on the same factual theories set out in connection with his claim under 31 U.S.C. § 3729(a)(1)(A). Relator does not add substantive detail or any additional factual allegations in support of his (a)(1)(B) claims, and for the same reasons described above, Relator's deficient allegations mandate the dismissal of this claim. This Court has made clear that a

"false claim is essential not only under § 3729(a)(1)(A), which deals directly with false claims, but also under § 3729(a)(1)(B)." *84Partners*, 79 F.4th at 1360. "Standing alone, a fraudulent scheme, no matter how egregious, is not enough; there must be an actual false claim." *Id.*

Relator advocates for a lower pleading bar for his (a)(1)(B) claims, relying on *Gose*, a fraudulent inducement case, and *Hopper*, a case interpreting a prior version of section (a)(1)(B). Op. Br. 39. But this Court's precedent interpreting the current version of § 3729(a)(1)(B) is clear that to satisfy Rule 9(b) the complaint must allege with particularity that: (1) the defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim. *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F. 3d 1148, 1154 (11th Cir. 2017). Presentment of a false claim is "necessarily part" of the third element. *Olhausen v. Arriva Med., LLC*, 124 F.4th 851, 864 (11th Cir. 2024) (per curiam).

***Relator has not adequately pleaded a kickback claim.*** Relator asserts a separate count (Count Five) premised on alleged kickback violations under both § 3729(a)(1)(A) and (a)(1)(B). This count asserts a different theory of falsity, but the other elements of the cause

of action remain unchanged. Relator's failure to plead a violation of § 3729(a)(1)(A) and (a)(1)(B) thus apply equally to this count.

***Relator has not adequately pleaded a reverse false claim.*** Relator's claim for a reverse false claim is a rote recitation of the elements of a § 3729(a)(1)(G) violation. Relator incorporated by reference nearly all paragraphs of the complaint relating to Riverview Hospital, and then in one paragraph cast a blanket assertion that Riverview Hospital, River Region, Alabama Psychiatry and Dr. Yalamanchili committed a reverse FCA violation. This is a far cry from satisfying Rule 9(b). Relator has failed to identify with particularity any payment obligation that was improperly retained.

On appeal, Relator attempts to crystalize his theory by arguing that the facts underlying his (a)(1)(A) and (a)(1)(B) theories resulted in overpayments that should have been repaid. Op. Br. 42. It is too late to assert this theory, but even if it had been pled with particularity in the complaint, it fails for the same reasons as his claims under (a)(1)(A) and (a)(1)(B). *See United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 706 & n.20 (11th Cir. 2014) (explaining if claims under 31 U.S.C. § 3729(a)(1)(A) and § 3729(a)(1)(B) fail, the reverse false claims

allegation also fails because it is based on false claims having been paid that Defendants failed to repay).

***Relator has not adequately pleaded a conspiracy.*** Relator also contests dismissal of his conspiracy count, Op. Br. 42–44, but as the district court recognized, this claim fails on multiple independent grounds. *See* Dkt. 69 at 29–31.

*First*, Relator's derivative conspiracy claim fails because he does not adequately plead an underlying statutory violation. An FCA conspiracy arises when a defendant "conspires to commit a violation of" the FCA. 31 U.S.C. § 3729(a)(1)(C). Accordingly, multiple courts in this Circuit have held that when a relator's underlying FCA counts fail to state a claim, his FCA conspiracy count must also be dismissed. *See United States ex rel. Marsteller v. Tilton*, 556 F. Supp. 3d 1291, 1317 (N.D. Ala. 2021) (noting that "secondary liability for conspiracy" to violate the FCA "cannot exist without a viable underlying claim" (quoting *United States ex rel. Headen v. Adams & Assocs., Inc.*, 2017 WL 6017775, at *13 n.22 (N.D. Ala. Dec. 5, 2017))); *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 2025 WL 863466, at *12 (N.D. Ala. Mar. 19, 2025), *appeal docketed*, No. 25-11147 (11th Cir. Apr. 9, 2025); *United States ex*

*rel. Potra v. Jacobson Cos.*, 2014 WL 1275501, at *4 (N.D. Ga. Mar. 27, 2014). Courts in other Circuits have reached the same conclusion. *United States ex rel. Angelo v. Allstate Ins. Co.*, 106 F.4th 441, 452 (6th Cir. 2024) (dismissal of FCA conspiracy claim required when "relators failed to adequately plead a substantive False Claims Act violation"); *United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*, 929 F.3d 721, 728–29 (D.C. Cir. 2019); *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 501 & n.9, 507 (3d Cir. 2017); *United States ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 801 (8th Cir. 2011), *superseded by statute on other grounds*; *United States ex rel. Godfrey v. KBR, Inc.*, 360 F. App'x 407, 413 (4th Cir. 2010) (per curiam). Because the district court correctly dismissed Relator's other claims asserting FCA violations, the court correctly dismissed the conspiracy count as well.

*Second*, Relator's complaint fails to adequately plead the existence of an FCA conspiracy in its own right. Relator acknowledges that to state a claim for conspiracy under the FCA, he must allege with particularity that "'the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States.'" Op. Br. 42 (quoting *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1319 (11th Cir. 2024)). Relator

points to allegations about the contract under which Alabama Psychiatry agreed to provide psychiatric coverage and medical direction services at Riverview Hospital. *See* Op. Br. 43 (citing Dkt. 40 ¶¶ 142, 172). "But a contractual relationship alone does not suggest collusion any more than it suggests a legitimate business relationship." *Angelo*, 106 F.4th at 453 (affirming dismissal of FCA conspiracy claim based on failure to plead an unlawful agreement). And even if these allegations *could* somehow suggest "that Defendants agreed to violate certain Medicare regulations[,]" the district court correctly found that "they do not plead with any specificity an agreement to *submit an actual false claim or to get a false claim paid*." Dkt. 69 at 31 (emphasis added).

This failure is fatal to Relator's conspiracy claim. As set forth above, the complaint fails to allege with particularity that any false claims were submitted to the government. Relator's futile effort to evade that conclusion misconstrues the applicable pleading standard and resorts to inapposite policy arguments.

* * *

Relator's attempts to plead viable FCA claims against Riverview Hospital span five years and four separate complaints. Because he failed

to file a timely notice of appeal, waiting more than a year after the district court dismissed his claims with prejudice and entered a minute order closing the case, this appeal should be dismissed on jurisdictional grounds. Even if the Court were to reach the merits, however, it should affirm the district court's careful decision. Because Relator "repeated[ly] fail[ed] to cure deficiencies by [previous] amendments," the district court "was not required to give [him] another opportunity to correct his errors" and correctly entered dismissal with prejudice. *Corsello*, 428 F.3d at 1014 (quotation marks omitted); *see also Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1057 (11th Cir. 2015) ("[t]hree attempts at proper pleading are enough"); *Lucas v. USAA Cas. Ins. Co.*, 716 F. App'x 866, 871 (11th Cir. 2017) (per curiam). Moreover, any further attempt to amend would be "futile." *Corsello*, 428 F.3d at 1015; *see also United States ex rel. Chase v. HPC Healthcare, Inc.*, 723 F. App'x 783, 792–93 (11th Cir. 2018). Relator is not a corporate insider with personal information. More than five years have passed since Relator last saw patients at Riverview Hospital, and the so-called "claim examples" that Relator *has* pleaded are plainly insufficient.

**CONCLUSION**

The Court should dismiss this appeal for lack of jurisdiction or, if it reaches the merits, affirm the district court's judgment below.

Respectfully submitted,

*/s/ Ashley C. Parrish*

Ashley C. Parrish
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
(202) 737-0500
aparrish@kslaw.com

Michael E. Paulhus
Alana K. Broe
KING & SPALDING LLP
1180 Peachtree Street NE
Suite 1600
Atlanta, GA 30309
(404) 572-4600
mpaulhus@kslaw.com
abroe@kslaw.com

*Counsel for Prime Healthcare Services – Gadsden LLC*

June 9, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 10,660 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionately spaced typeface using Microsoft Word Century Schoolbook 14-point font.

Date: June 9, 2025

*/s/ Ashley C. Parrish*
Ashley C. Parrish

*Counsel for Prime Healthcare Services, Inc. – Gadsden LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2025, the foregoing was filed with the Clerk of the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system, which will cause a notice of electronic filing to be served on all registered counsel of record.

*/s/ Ashley C. Parrish*
Ashley C. Parrish

*Counsel for Prime Healthcare Services, Inc. – Gadsden LLC*