**No. 24-12809**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

Ramnarine Boodoo,

*Plaintiff-Appellant*

v.

Lifepoint Health Inc., et al.

*Defendants-Appellees*

Appeal from the United States District Court
for the Northern District of Alabama

No. 2:21-cv-00569

---

# APPELLANT'S REPLY BRIEF

---


Benjamin P. Bucy
Chloé M. Chetta
Aaron M. Steeg
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Ste. 2350
New Orleans, Louisiana 70112
(504) 589-9700
bbucy@barrassousdin.com
cchetta@barrassousdin.com
asteeg@barrassousdin.com

James F. Barger, Jr.
J. Elliott Walthall
FROHSIN BARGER & WALTHALL
100 Main Street
Saint Simons Island, Georgia 31522
(205) 933-4006
jim@frohsinbarger.com
elliott@frohsinbarger.com

*Attorneys for Appellant Ramnarine Boodoo*

No. 24-12809, *Boodoo v. Lifepoint Health Inc.*

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Eleventh Circuit Rule 26.1-2(b), the undersigned counsel of record verifies that the Certificate of Interested Persons and Corporate Disclosure Statement contained in Appellant's opening brief remains complete and accurate.

**TABLE OF CONTENTS**


Table of Citations ........ iii

Introduction ........ 1

Reply Argument ........ 3

I. Dr. Boodoo's appeal is timely. ........ 3

II. The Appellees' proposed application of Rule 9(b) improperly supplants the simplified pleading required by Rule 8 with an unreachable standard that would nullify the False Claims Act *qui tam* enforcement scheme. ........ 6

III. Under the proper Rule 9(b) analysis, Dr. Boodoo plausibly and specifically pled the submission of false claims in the form of annual cost reports. ........ 9

A. Dr. Boodoo has consistently asserted that costs reports are claims, and he is right. ........ 9

B. Dr. Boodoo plausibly and specifically alleged that Prime Healthcare's 2018 and 2019 annual cost reports were materially false and submitted to the government. ........ 11

C. River Region, Alabama Psychiatry, and Dr. Yalamanchili can and should be held liable for these false cost reports too. ........ 14

IV. Billing records are not required to plausibly and specifically establish false individual-patient claims, and Dr. Boodoo demonstrated sufficient "indicia of reliability" that these claims were submitted to Medicare. ........ 15

V. Regardless of whether Dr. Boodoo sufficiently established presentment, his false-statement, reverse-false-claims, and conspiracy causes of action are still well pled and the district court's dismissal of these claims should be reversed. ........ 19

VI. The amended complaint is not a shotgun pleading. ........ 21

VII. The amended complaint plausibly and specifically pled retaliation against River Region and Dr. Yalamanchili. ....................................23

Conclusion ..................................................................................................25

Certificate of Compliance ............................................................................26

Certificate of Service ...................................................................................26

## TABLE OF CITATIONS

**Page(s)**

***Cases***

*Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*,
119 F.3d 847 (10th Cir. 1997) ....................5

*Estate of Helmly v. Bethany Hospice & Palliative Care of Coastal Georgia, LLC*,
853 F. App'x 496 (11th Cir. 2021) ....................12

*Fla. Ass'n for Retarded Citizens, Inc. v. Bush*,
246 F.3d 1296 (11th Cir. 2001) ....................5

*Foman v. Davis*,
371 U.S. 178 (1962) ....................5

*Gose v. Native Am. Servs. Corp.*,
109 F.4th 1297 (11th Cir. 2024) .................... *passim*

*Greenlaw v. United States*,
554 U.S. 237 (2008) ....................4

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999) ....................9

*Hart v. Hodges*,
587 F.3d 1288 (11th Cir. 2009) ....................24

*Hopper v. Solvay Pharms., Inc.*,
588 F.3d 1318 (11th Cir. 2009) .................... 18, 20

*Hubbard v. United States*,
514 U.S. 695 (1995) ....................9

*In re Cardiac Devices Qui Tam Litig.*,
221 F.R.D. 318 (D. Conn. 2004) ....................10

*Mason v. Medline Indus., Inc.*,
731 F. Supp. 2d 730 (N.D. Ill. 2010)....................................................................10

*Olhausen v. Arriva Med., LLC*,
124 F.4th 851 (11th Cir. 2024) ........................................................ 13, 18, 20

*Ruckh v. Salus Rehabilitation, LLC*,
963 F.3d 1089 (11th Cir. 2020) ............................................................. 15, 15

*Scott v. United States*,
890 F.3d 1239 (11th Cir. 2018) ....................................................................20

*Symonette v. V.A. Leasing Corp.*,
648 F. App'x 787 (11th Cir. 2016) ....................................................................5

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001) ..........................................................................................20

*United States ex rel. 84Partners, LLC v. Nuflo, Inc.*,
79 F.4th 1353 (11th Cir. 2023) .................................................................. 7, 15

*United States ex rel. Clausen v. Lab. Corp. of Am.*,
290 F.3d 1301 (11th Cir. 2002) ...................................................... 9, 13, 16, 17

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
498 F. Supp. 2d 25 (D.D.C. 2007)..................................................................10

*United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*,
591 F. App'x 693 (11th Cir. 2014) ..................................................................17

*United States ex rel. Matheny v. Medco Health Sols., Inc.*,
671 F.3d 1217 (11th Cir. 2012) ........................................................ 16, 17, 21

*United States ex rel. Osheroff v. Tenet Healthcare Corp.*,
No. 09-cv-22253, 2013 WL 1289260 (S.D. Fla. Mar. 27, 2013).....................10

*United States ex rel. Putnam v. E. Idaho Reg'l Med. Ctr.*,
696 F. Supp. 2d 1190 (D. Idaho 2010) ...........................................................10

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
125 F.3d 899 (5th Cir. 1997) ....................................................................10

*United States v. Baycare Health Sys.*,
No. 14-cv-073, 2015 WL 4878456 (M.D. Fla. Aug. 14, 2015) .......................10

*United States v. Bourseau*,
531 F.3d 1159 (9th Cir. 2008) ....................................................................10

*United States v. Neifert-White Co.*,
390 U.S. 228 (1968) ........................................................................... 9, 10

*Urquilla-Diaz v. Kaplan Univ.*,
780 F.3d 1039 (11th Cir. 2015) ................................................................1, 6

*Vargas v. Lincare, Inc.*,
134 F.4th 1150 (11th Cir. 2025) ....................................................................2

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015) ........................................................ 21, 22, 23

***Regulations***

42 C.F.R. § 412.25 ........................................................................... 8, 14

42 C.F.R. § 412.27(a) ...........................................................................8

## INTRODUCTION

"Congress wrote the [False Claims Act] expansively, meaning to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Gose v. Native Am. Servs. Corp.,* 109 F.4th 1297, 1314 (11th Cir. 2024) (cleaned up). And while actions under the False Claims Act are subject to Rule 9(b)'s heightened fraud-pleading standard, "a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of Rule 9(b) with the broader policy of notice pleading." *Id.* at 1318.

Far from "harmonizing" Rule 9(b) with the philosophy of simplified pleading expressed by Rule 8, the Appellees' proposed application of Rule 9(b) essentially replaces Rule 8 in False Claims Act cases with a supercharged pleading standard that goes far beyond the role Rule 9(b) is intended to serve. *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) ("In an action under the False Claims Act, Rule 8's pleading standard is supplemented but not supplanted by Federal Rule of Civil Procedure 9(b).").[1] When properly applied, "Rule 9(b) serves two purposes:

---

[1] As used herein, the term "Appellees" refers to Prime Healthcare Services-Gadsden, LLC, River Region Psychiatry Associates, LLC, Alabama Psychiatry, LLC and Shankar B. Yalamanchili. While RCHP-Florence, LLC d/b/a Shoals Hospital has also filed a merits brief, as stated in Dr. Boodoo's opening brief, Dr. Boodoo's co-relator, Dr. Andrew Wilkerson, is not a party to this appeal and the claims concerning Shoals Hospital in the amended complaint are therefore not at issue in this appeal. Boodoo Br. at 10 n.3. The arguments in Shoals Hospital's brief are therefore not addressed in this reply.

alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Gose*, 109 F.4th at 1317. Neither concern is implicated by Dr. Boodoo's amended complaint.

From the outset of this case, Dr. Boodoo clearly, consistently, plausibly, and particularly set out each Appellees' role in the fraudulent scheme at issue here and how each is liable under the False Claims Act for two forms of false submissions to the government: annual Medicare cost reports that fraudulently certified compliance with Medicare regulations to obtain millions of dollars in government payments, and ASC X12 837 claims for three patients who were fraudulently certified and admitted for inpatient psychiatric care. These false claims were facilitated by false statements, and the Appellees knowingly retained their ill-gotten gains, further exposing themselves to False Claims Act liability.

Put simply, the Appellees "confuse pleading with proof." *Vargas v. Lincare, Inc.*, 134 F.4th 1150, 1159 (11th Cir. 2025). At the motion-to-dismiss stage, "[t]he question is not whether [Dr. Boodoo] proved fraud; it is whether [he] alleged it with particularity." *Id.* He did. The district court erred in dismissing Dr. Boodoo's claims. Dr. Boodoo has timely appealed from that dismissal. And this Court should reverse.

## REPLY ARGUMENT

### I. Dr. Boodoo's appeal is timely.

The district court entered final judgment on August 29, 2024. Doc. 85.[2] Dr. Boodoo filed his notice of appeal from that judgment on August 30, 2024. Doc. 86. That is all this Court needs to know to conclude that Dr. Boodoo's appeal is timely. *See* Fed. R. App. P. 4(a)(1)(A) ("[T]he notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.").

To resist this conclusion, the Appellees make two different but equally unmeritorious arguments. Prime Healthcare says that Dr. Boodoo's appeal is untimely because it was not filed within 30 days of the district court's August 25, 2023 minute entry administratively closing the case following the stipulation of dismissal signed by RCHP-Florence, LLC and Dr. Wilkerson. Prime Br. at 3–7; *see also* D. Ct. Dkt. Sheet (App'x Tab A). If Dr. Boodoo were appealing from the August 25, 2023 minute entry, Prime Healthcare would be absolutely right. But Dr. Boodoo does not appeal from that minute entry. Rather, Dr. Boodoo appeals "from the final order entered August 29, 2024," Doc. 86, which "**VACATES** the August 25, 2023 minute entry" and enters a proper dismissal order in its place, Doc. 85 at 3–4. Prime

---

[2] Dr. Boodoo's response to this Court's jurisdictional question explains why the district court's August 29, 2024 order is a final order. In its own response, Prime Healthcare agreed that the August 29, 2024 is a final order.

Healthcare may wish that the district court had not entered its August 29, 2024 order. But it did. And Prime Healthcare cannot reasonably contend that Dr. Boodoo's appeal from that order is untimely—because it is not.[3]

As for River Region, Alabama Psychiatry, and Dr. Yalamanchili, these appellees contend that the August 29, 2024 order was "improper[]" because "[t]he district court did not have jurisdiction on August 29, 2024." River Region Br. at xii n.3, 11 n.8. But none of these appellees moved the district court to reconsider this allegedly "improper" order nor did they cross-appeal to contest the order's validity. And "it takes a cross-appeal to justify a remedy in favor of an appellee." *Greenlaw v. United States*, 554 U.S. 237, 244–45 (2008). Because neither River Region, Alabama Psychiatry, nor Dr. Yalamanchili cross-appealed, this Court "may not alter [the August 29, 2024] judgment to benefit [these] nonappealing part[ies]." *Id.* at 244.

Regardless, River Region, Alabama Psychiatry, and Dr. Yalamanchili cite no authority in support of their baseless contention that the district court lacked authority to revisit its August 25, 2023 minute entry administratively closing the case. That is because "an administrative closing has no effect other than to remove

---

[3] Prime Healthcare suggests that Dr. Boodoo was required to file a motion to reopen the time for filing an appeal from the August 25, 2023 minute entry. Prime Br. at 8–9. Indeed, Dr. Boodoo was prepared to do just that and had informed the district court that "Dr. Boodoo will move to reopen the time to file an appeal pursuant to Federal Rule of Appellate Procedure 4(a)(6)." Case No. 23-cv-00460 (N.D. Ala.), Doc. 45 at 4 n.2. But the district court's August 29, 2024 order rendered Dr. Boodoo's planned motion unnecessary.

a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository." *Fla. Ass'n for Retarded Citizens, Inc. v. Bush*, 246 F.3d 1296, 1298 (11th Cir. 2001). "Designating a case 'closed' does not prevent the court from reactivating a case either of its own accord or at the request of the parties." *Id.*

Finally, although this Court need not resort to this principle to find Dr. Boodoo's appeal timely, when an interpretation of the Federal Rules impacts whether certain claims can be appealed, such interpretation must be "founded upon a policy which favors deciding cases on the merits as opposed to dismissing them because of minor technical defects." *Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 848 (10th Cir. 1997); *see also Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 789 (11th Cir. 2016) ("[I]t is contrary to the spirit of the Federal Rules of Civil Procedure to avoid decisions on the merits on the basis of mere technicalities." (citing *Foman v. Davis*, 371 U.S. 178, 181 (1962))). Here, Dr. Boodoo proceeded under the belief that the district court's April 11, 2023 severance order (Doc. 76) separated *all* of his claims— including those claims dismissed at the Rule 12(b) stage and the surviving retaliation claim—into Case No. 23-cv-00460. He therefore waited until after summary judgment to file his Notice of Appeal, which he thought encompassed the 12(b)(6) dismissal opinion and orders. *See* Fed. R. App. P. 3 advisory committee's note to 2021 amendment (explaining that where "some

claims [are] dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and then, after a considerable period for discovery, summary judgment under Fed. R. Civ. P. 56 is granted in favor of the defendant on the remaining claims," the summary-judgment order "is a final judgment, and an appeal from that final judgment confers jurisdiction to review the earlier Fed. R. Civ. P. 12(b)(6) dismissal."). There is nothing unfair about requiring Prime Healthcare, River Region, Alabama Psychiatry, and Dr. Yalamanchili to defend their 12(b)(6) dismissals on appeal. The only unfair result would be to shut the appellate courthouse door to Dr. Boodoo.

## II. The Appellees' proposed application of Rule 9(b) improperly supplants the simplified pleading required by Rule 8 with an unreachable standard that would nullify the False Claims Act *qui tam* enforcement scheme.

"In an action under the False Claims Act, Rule 8's pleading standard is supplemented *but not supplanted* by Federal Rule of Civil Procedure 9(b)." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (emphasis added). Accordingly, "a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of Rule 9(b) with the broader policy of notice pleading." *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1318 (11th Cir. 2024). The Appellees' proposed application of Rule 9(b) tramples on these principles, essentially replacing Rule 8 in False Claims Act cases with a heightened pleading standard that only an employee in a hospital billing

department could potentially meet. Properly applied, "Rule 9(b) serves two purposes: alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Gose*, 109 F.4th at 1317 (quoting *United States ex rel. 84Partners, LLC v. Nuflo, Inc.,* 79 F.4th 1353, 1360 (11th Cir. 2023)). Neither concern is implicated by Dr. Boodoo's amended complaint.

The amended complaint put each defendant on notice of their alleged wrongdoings. As Dr. Boodoo explained, Dr. Yalamanchili is the owner and founder of River Region Psychiatry Associates, LLC, which operates as Alabama Psychiatry, LLC in Alabama. Doc. 40 at 4 (¶¶ 10, 12). Prime Healthcare Services-Gadsden LLC d/b/a Riverview Regional Medical Center contracted for River Region d/b/a Alabama Psychiatry to manage Riverview's inpatient psychiatric facility (the "Riverview IPF"). *Id.* at 4 (¶ 11). Prime Healthcare conditioned this lucrative relationship on River Region, Alabama Psychiatry, and Dr. Yalamanchili's willingness to admit only Medicare-insured patients regardless of medical need and to extend the stays of these patients for as long as possible to maximize the per diem fees that Prime Healthcare could collect from Medicare. *Id.* at 50–51 (¶ 172).

River Region, Alabama Psychiatry, and Dr. Yalamanchili were happy to oblige. River Region d/b/a Alabama Psychiatry, under the control and supervision of Dr. Yalamanchili and at the instruction of Prime Healthcare, intentionally did not use

written admission criteria—in violation of Medicare's requirement that inpatient psychiatric facilities use written admission criteria that are "applied uniformly to both Medicare and non-Medicare patients"—so that they could selectively admit profitable, and often inappropriate, Medicare patients while refusing to admit appropriate but unprofitable non-Medicare patients. *Id.* at 14 (¶ 47), 45–46 (¶¶ 149–50), 51–52 (¶¶ 175–80); 42 C.F.R. § 412.25. And in violation of Medicare's rule that patients be admitted to an inpatient psychiatric facility only while they need "active treatment . . . of an intensity that can be provided appropriately only in an inpatient hospital setting," Dr. Boodoo was repeatedly instructed—by officials of both Prime Healthcare and River Region d/b/a Alabama Psychiatry, including Dr. Yalamanchili—to extend the length of his patients' stays for as long as possible regardless of medical need and to no less than an average of fifteen days. Doc. 40 at 15 (¶ 49), 47–48 (¶¶ 158–60), 48–49 (¶¶ 163–66); 42 C.F.R. § 412.27(a). River Region d/b/a Alabama Psychiatry further padded its bottom line by engaging in "up-coding," a practice whereby it billed Medicare Part B for services that were more expensive than those provided to the patient. *Id.* at 44 (¶ 146). These detailed claims provide sufficient notice to each defendant and Dr. Boodoo's personal involvement and substantial pre-discovery evidence shows that his claims are not "spurious."

## III. Under the proper Rule 9(b) analysis, Dr. Boodoo plausibly and specifically pled the submission of false claims in the form of annual cost reports.

Under the proper Rule 9(b) analysis—not the supercharged version pushed by the Appellees—Dr. Boodoo's allegations concerning the legally false annual cost reports satisfy Rule 9(b)'s requirements.

### A. Dr. Boodoo has consistently asserted that costs reports are claims, and he is right.

Prime Healthcare wrongly asserts that Dr. Boodoo's contention that the hospital's annual cost reports are false claims is a "new" argument being raised "for the first time on appeal." Prime Br. at 26–27, 37. Dr. Boodoo repeatedly raised the argument in his amended complaint (*e.g.*, Doc. 40 at 59 (¶¶ 193–94), 66 (¶ 219)) and again in his district court briefing (Doc. 61 at 24–26), and the district court addressed it in its order (albeit summarily and erroneously) (Doc. 69 at 16, 20–21).

Prime Healthcare is equally mistaken in its assertions that its annual cost reports are not "claims" for purposes of False Claims Act liability. The term "claim" in the False Claims Act has long been interpreted "broadly" to include any "call upon the government fisc." *Hubbard v. United States*, 514 U.S. 695, 703 n.5 (1995); *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002) (quoting *Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 785 (4th Cir. 1999)); *see also United States v. Neifert-White Co.,* 390 U.S. 228, 233 (1968) (explaining that "claim" encompasses "all fraudulent attempts to cause the

Government to pay out sums of money"). And the very purpose of the annual cost reports is to sum up the total amount of Medicare Part A reimbursements to which the hospital is entitled for the year so that Medicare can "determine whether the provider is entitled to more reimbursement than it has received through interim payments." Doc. 40 at 20 (¶ 69). In other words, annual cost reports are used to determine whether the government needs "to pay out [additional] sums of money" to the hospital. *See Neifert-White Co.,* 390 U.S. at 233.

For this reason, numerous courts, including the Fifth and Ninth Circuits and district courts in this Circuit, have concluded that annual Medicare cost reports qualify as "claims" within the meaning of the False Claims Act. *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997); *United States v. Bourseau*, 531 F.3d 1159, 1164 n.1 (9th Cir. 2008); *United States ex rel. Osheroff v. Tenet Healthcare Corp.*, No. 09-cv-22253, 2013 WL 1289260, at *5–7 (S.D. Fla. Mar. 27, 2013); *United States v. Baycare Health Sys.*, No. 14-cv-073, 2015 WL 4878456, at *5 (M.D. Fla. Aug. 14, 2015).[4] Notably, no Appellee has identified a single case holding that annual cost reports are *not* claims.

---

4 *See also Mason v. Medline Indus., Inc.*, 731 F. Supp. 2d 730, 736 (N.D. Ill. 2010) ("[C]ost reports are claims within the meaning of the FCA."); *United States ex rel. Putnam v. E. Idaho Reg'l Med. Ctr.*, 696 F. Supp. 2d 1190, 1199 (D. Idaho 2010); *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 57 (D.D.C. 2007); *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 344 (D. Conn. 2004) ("[T]he submission of the annual Cost Report forms with their accompanying certifications that the reports

### B. Dr. Boodoo plausibly and specifically alleged that Prime Healthcare's 2018 and 2019 annual cost reports were materially false and submitted to the government.

Unable to overcome the wave of precedent holding that a hospital's annual cost reports are "claims" for purposes of False Claims Act liability, Prime Healthcare resorts to the specious assertions that Dr. Boodoo has not sufficiently pleaded that these cost reports "were actually submitted to the government" or that they contained "a materially false certification." Both should be swiftly rejected.

Beginning with submission, Dr. Boodoo's amended complaint included detailed information from Prime Healthcare's 2018 and 2019 annual cost reports:

> In early 2019, Riverview Medical Center submitted a year-end CMS Cost Report Form 2552-10 for all IPF PPS claims in 2018. The 2018 year-end Cost Report Form 2552-10 claimed a net Federal IPF PPS payment of $2,514,118 and an additional $801,588 in Net IPF PPS Outlier payments for a total of $3,315,706. . . . Then, in early 2020, Defendant Riverview Medical Center submitted a year-end CMS Cost Report Form 2552-10 for all IPF PPS claims in 2019, including 3,768 inpatient days in the Riverview IPF. . . . The 2019 year-end Cost Report Form 2552-10 claimed a net Federal IPF PPS payment of $1,979,657 and an additional $121,089 in Net IPF PPS Outlier payments.

Doc. 40 at 59 (¶¶ 193–94). These numbers were not pulled out of thin air. Rather, they were drawn directly from the data concerning Prime Healthcare's cost reports that is publicly available on the Centers for Medicare & Medicaid Services' website. *See* Boodoo Br. at 29 & n.5. That data would not be available if a cost report had

---

were true, correct, and complete and prepared in accordance with applicable instructions, constituted the submission of a claim.").

never been submitted. Nor would Riverview have been permitted to continue operating if it had flouted this mandatory submission requirement. *See* Doc. 40 at 20 (¶ 69). Put simply, Prime Healthcare's contention that it may not have actually filed its 2018 and 2019 annual cost reports with the federal government defies credulity.

This Court's opinion in *Estate of Helmly v. Bethany Hospice & Palliative Care of Coastal Georgia, LLC* is not to the contrary. 853 F. App'x 496 (11th Cir. 2021). Prime Healthcare claims that *Helmly* stands for the proposition "that pleading aggregate Medicare data does not satisfy the FCA's submission element." Prime Br. at 39. It does not. In *Helmly*, the relators' relied on generalized "Medicare claims data," not a specific CMS 2552-10 Cost Report that was required to be submitted in order to receive or retain a Medicare reimbursement. 853 F. App'x at 502. And the relators' theory was that "Bethany Hospice submitted false claims when it billed the government *for services provided to illegally-referred patients*." *Id.* at 497 (emphasis added). But the relators could point to nothing more than "mathematical probability" to support their theory that claims *for these particular patients* were actually included in the aggregate "Medicare claims data," which this Court deemed insufficient. *Id.* at 502–03. Here, Dr. Boodoo's cost-report-based claim has nothing to do with individual patients. Rather, Dr. Boodoo claims that Riverview was "was ineligible to bill" Medicare at all because it was not complying with threshold conditions for participating in the Medicare Inpatient Psychiatric Facility

Prospective Payment System (IPF PPS). Doc. 40 at 51 (¶ 175), 65 (¶ 218(a)). Stated differently, Dr. Boodoo alleges that "*all claims* submitted by Riverview Medical Center under the IPF PPS billing system are false." *Id.* at 51 (¶ 175) (emphasis added). So the only question is whether *any* claim was submitted, and Prime Healthcare's Medicare cost-report submissions answer that question in the affirmative. *See Olhausen v. Arriva Med., LLC*, 124 F.4th 851, 865–67 (11th Cir. 2024) (finding that relator pled submission of a false claim with particularity based on audit data showing that "at least some claims" "were actually submitted").

Prime Healthcare's speculation that its 2018 and 2019 cost reports may not have contained false certifications fares no better. In Prime Healthcare's own words, "To satisfy Rule 9(b)'s requirements for a false certification claim, the complaint must set forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" Prime Br. at 42–43 (quoting *Clausen*, 290 F.3d at 1310). The amended complaint does just that; it explains:

(1) Each cost report contained a certification "that the services identified in this cost report were provided in compliance with [Medicare's governing] laws and regulation." Doc. 40 at 21 (¶ 72).

(2) These certifications were signed by Riverview's administrator or Chief Financial Officer and submitted in "early 2019" and "early 2020." *Id.* at 59 (¶¶ 193–94); *see also Olhausen,* 124 F.4th at 865 (finding "the third quarter of 2015" sufficient to establish "when" and the name of the submitting entity sufficient to establish "who" under Rule 9(b)).

(3) These certifications "misled" the government because the services Riverview IFP provided were *not* in compliance with Medicare's rules. Instead, Riverview IPF did not have any written admission criteria and based its admittance decisions solely on the patient's insurance coverage—violating Medicare's requirement that IPFs use "written admission criteria that are applied uniformly to both Medicare and non-Medicare patients." Doc. 40 at 45–46 (¶ 150); 42 C.F.R. 412.25.

(4) As a result of these fraudulent certifications, Prime Healthcare "obtained" $2,976,306 and $1,775,690 in additional Medicare payments in 2019 and 2020, respectively. Doc. 40 at 59 (¶¶ 193–94).

### C. River Region, Alabama Psychiatry, and Dr. Yalamanchili can and should be held liable for these false cost reports too.

River Region, Alabama Psychiatry, and Dr. Yalamanchili contend that Dr. Boodoo "does not argue in his brief that these [cost] reports support his claims against" them and that, regardless, they cannot be held liable for the false cost reports because the reports were not "prepared by, submitted to and/or signed by River Region, Alabama Psychiatry or Dr. Yalamanchili." River Region Br. at 29–30. They are wrong on both fronts.

As Dr. Boodoo explained in his opening brief, Section 3729(a)(1)(A) "creates two theories of liability," "(1) a presentment theory and (2) a cause to be presented theory," and River Region, Alabama Psychiatry, and Dr. Yalamanchili fall under the latter theory because "they caused Prime Healthcare to submit" the legally false cost

reports. Boodoo Br. at 35–36 (quoting *Ruckh v. Salus Rehabilitation, LLC*, 963 F.3d 1089, 1106 (11th Cir. 2020)). So River Region, Alabama Psychiatry, and Dr. Yalamanchili need not have "prepared," "submitted," or "signed" the cost reports to be held liable for the reports' falsity. Rather, they are deemed to have "caused the submission of a claim for Medicare reimbursement if the[ir] conduct was (1) a substantial factor in inducing providers to submit claims for reimbursement, and (2) if the submission of claims for reimbursement was reasonably foreseeable or anticipated as a natural consequence of [their] conduct." *Ruckh*, 963 F.3d at 1107. It was. *See* Boodoo Br. at 36–37.

## IV. Billing records are not required to plausibly and specifically establish false individual-patient claims, and Dr. Boodoo demonstrated sufficient "indicia of reliability" that these claims were submitted to Medicare.

Alabama Psychiatry, River Region, and Dr. Yalamanchili argued in bolded and underlined text that "[w]ithout identification of an actual bill, the amount of the bill, [or] the date it was submitted," Dr. Boodoo cannot satisfy Rule 9(b) with respect to individual-patient claims. River Region Br. at 30 (emphases removed). Prime Healthcare similarly claims that Dr. Boodoo's failure to provide "copies of bills" or "identify the codes billed" in his complaint is fatal. Prime Br. at 31. But that is not the law.

This Court recently addressed this exact issue and clarified for all litigants that prior cases "did *not* say attaching a copy of a bill is always required." *84Partners,*

*LLC*, 79 F.4th at 1361 (emphasis added). Instead, this Court explained that while courts may look for copies of bills, information on "amounts of charges," allegations of "actual dates" of charges, and assertions about billing policies or practices to establish the requisite particularity, only "some of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b)." *Id.* (quoting *Clausen*, 290 F.3d at 1312 & n.21). The amended complaint satisfies this standard, identifying the "amounts of charges" for three exemplar patients, the "actual dates" that these charges were incurred, the exact form on which these patients' claims were submitted to Medicare (ASC X12 837I), and who oversaw the billing of these claims. Doc. 40 at 54–58 (¶¶ 185–86, 188–89, 191–92).

For similar reasons, the Appellees are wrong in their claims that Dr. Boodoo cannot sufficiently establish "indicia of reliability" as to the actual submission of false claims for the three exemplar patients identified in the amended complaint because he "did not work in the billing office and was not involved in the submission of bills." River Region Br. at 33; *see also* Prime Br. at 35 (asserting that the fact that a "relator had no role in billing and no personal knowledge of what claims were submitted" is "controlling"). This Court is "more tolerant toward complaints that leave out some particularities of the submissions of a false claim if the complaint also alleges personal knowledge or participation in the fraudulent conduct." *United States ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1230 (11th Cir.

2012). No Appellee even attempts to grapple with the significance of *Matheny*'s instruction. Instead, they cherry-pick favorable lines from other cases and attempt to graft them onto this one. But this Court applies a "nuanced, case-by-case approach" to determining whether a relator has "present[ed] the required indicia of reliability that a false claim was actually submitted." *United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 704 (11th Cir. 2014). And under the unique facts of *this* case, the required indicia of reliability are present.

Dr. Boodoo "alleges personal knowledge or participation in the fraudulent conduct" and is therefore entitled to "more toleran[ce]" under *Matheny* when it comes to presentment. 671 F.3d at 1230. Dr. Boodoo was the attending physician who was responsible for admitting, discharging, and evaluating the quality and appropriateness of services and treatment provided to patients at the Riverview IPF. Doc. 40 at 42 (¶ 141). He was personally instructed to commit fraud, witnessed ineligible patients admitted and needy patients turned away based solely on whether they were insured by Medicare, and fought back against unlawful practices of delayed discharges and up-coding. *Id.* at 15 (¶ 49), 44 (¶ 146), 45–46 (¶¶ 149–50), 47–48 (¶¶ 158–60). And although Dr. Boodoo was admittedly not a member of Riverview's or River Region's billing departments, he still provided "*some* indicia of reliability . . . to support the allegation of an actual false claim for payment being made to the Government." *Mastej*, 591 F. App'x at 707 (quoting *Clausen*, 290 F.3d

at 1311) (emphases altered). He explained that Prime Healthcare's billing department submitted false Medicare Part A claims for at least three specific patients from their offices in Gadsden, Alabama under instructions from CEO John Langlois and other Riverview administrators, and that River Region d/b/a Alabama Psychiatry's billing department—specifically "billing employee Erin Gottschalk"—submitted false Medicare Part B claims from their headquarters in Montgomery, Alabama under instructions from Dr. Yalamanchili. Doc. 40 at 54–58, 65, 67–69, 71, 74, 76 (¶¶ 185–86, 188–89, 191–92, 218, 224, 226, 231, 233, 243, 244, 253, 260).[5] He detailed when these patients were admitted, their diagnoses, their treatment, when they were discharged, and why their claims were false. *Id.* at 53–58 (¶ 182–92). And he presented information concerning dates when charges were incurred for these patients and the total amount of the claim submitted to Medicare for these patients. *Id.* That is enough to survive Rule 9(b)'s particularity standard. *See, e.g.*, *Olhausen*, 124 F.4th at 866–67 (11th Cir. 2024) (holding that "indicia of reliability" can be established through a relator's "high level position . . . which allowed him to personally learn of Defendants' fraudulent practices").

---

[5] Rule 9(b) is satisfied when the complaint identifies the specific "*person or entity* who submitted a claim." *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1323 (11th Cir. 2009) (emphasis added).

## V. Regardless of whether Dr. Boodoo sufficiently established presentment, his false-statement, reverse-false-claims, and conspiracy causes of action are still well pled and the district court's dismissal of these claims should be reversed.

The Appellees adopt the district court's reasoning that Dr. Boodoo's causes of action under §§ 3729(a)(1)(B), (C) and (G) fail because Dr. Boodoo has not sufficiently established presentment of a false claim. Prime Br. at 47; River Region Br. at 48. But as explained above, Dr. Boodoo *did* sufficiently establish presentment. And therefore the Appellees concede that the dismissal of his remaining claims should be reversed too.

Regardless, Appellees' assertion that presentment is a required element of these other causes of action is wrong. Beginning with false statements under § 3729(a)(1)(B), Dr. Boodoo acknowledges that there appears to be a split of authority on this issue within this Circuit. Prime points to *Olhausen* and *84Partners* as holding that presentment is required under § 3729(a)(1)(B). Prime Br. 47–48. And Prime is correct that those cases do so hold. But Prime is wrong to give the back of its hand to *Gose*—which was issued between *Olhausen* and *84Partners*—where, as Dr. Boodoo explained in his opening brief, this Court reached the exact opposite conclusion: "that false statement claims do not demand proof that the defendant presented or caused to be presented a false claim to the government or that the defendant's false record or statement itself was ever submitted to the government." Boodoo Br. at 39 (quoting *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1309

n.14 (11th Cir. 2024)). What's more, *Gose* quotes *Hopper* for its conclusion that false-statement claims do not require presentment. *Gose*, 109 F.4th at 1309 n.14 (quoting *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1327 (11th Cir. 2009)). And although *Hopper* was "interpreting the pre-2009 amendment version of [§ 3729(a)(1)(B)]," *id.*, *Olhausen* says that "*Hopper*'s rule continues to apply after the amendment." 124 F.4th at 864. Dr. Boodoo believes that *Gose* is right for two reasons. First, requiring presentment for false-statement claims essentially writes § 3729(a)(1)(B) out of the False Claims Act by merging it with § 3729(a)(1)(A), in violation of the rule against interpreting statutes in a way that renders provisions "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). Second, because *Olhausen* says that *Hopper*'s rule still applies and *Hopper* is the oldest case in this string of authority, *Hopper* (and therefore *Gose*) controls under this Court's prior-panel-precedent rule. *Scott v. United States*, 890 F.3d 1239, 1257 (11th Cir. 2018) ("The prior-panel-precedent rule requires subsequent panels of the court to follow the precedent of the first panel to address the relevant issue, unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court. Even when a later panel is convinced the earlier panel is wrong, the later panel must faithfully follow the first panel's ruling.").

The analysis for Dr. Boodoo's other causes of action is more straightforward. No Appellee raises any caselaw contrary to this Court's holding in *Matheny* that "for

a reverse false claim action, presentment of a false claim is not at issue and presentment of a false statement is not required by the statute and thus, does not need to be pled." 671 F.3d at 1224 n.12. And the other elements of those claims are established for the reasons set forth in Dr. Boodoo's opening brief. Boodoo Br. at 40–44.

**VI. The amended complaint is not a shotgun pleading.**

Appellees appear to suggest that this Court could affirm dismissal on the alternative basis that the amended complaint was an impermissible shotgun pleading. Prime Br. at 11–12; River Region Br. at 13–18.[6] But careful consideration of the amended complaint's allegations demonstrates that does not implicate any of the concerns that the shotgun-pleading rule is designed to address.

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). But as Dr. Boodoo explained at length above, the amended complaint put each defendant on notice of their alleged wrongdoings. Indeed, despite Appellees' current

6 The district court did not dismiss the amended complaint on this basis. *See* Doc. 69 at 10–11.

protestations, none of them contended that they thought the complaint was an impermissible shotgun pleading in their respective motions to dismiss.

River Region, Alabama Psychiatry, and Dr. Yalamanchili make a fuss about the fact that the amended complaint's counts incorporated by reference certain prior factual allegations. River Region Br. at 15–16. But the amended complaint merely incorporates the relevant factual allegations into each count that requests a showing of such facts, a practice that is permissible and, indeed, common. *See, e.g.*, Doc. 40 at 65 (¶ 217) (incorporating specific paragraphs that represent the factual allegations against Prime Healthcare into Count Two). And regardless, as in *Weiland*, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count," and therefore there is no basis for a shotgun-pleading finding on these grounds. 792 F.3d at 1324.

Nor are the supposedly "conclusory allegations" in the amended complaint "not obviously connected to any particular cause of action," as required for a shotgun-pleading under *Weiland*. *Id.* at 1321–22. Each paragraph of the amended complaint is informative and helps guide the reader. And the amended complaint makes clear which allegations are connected to which cause of action.

Finally, although the amended complaint occasionally refers to River Region, Alabama Psychiatry, and Dr. Yalamanchili together as the "Yalamanchili

Defendants," it still clearly differentiates between the roles and conduct of Alabama Psychiatry (which holds the contract with Riverview IPF), River Region (which performs billing for its physicians and is Alabama Psychiatry's parent company), and Dr. Yalamanchili (the founder of River Region and owner-operator of Alabama Psychiatry). It is therefore not a shotgun pleading on this basis either.[7]

## VII. The amended complaint plausibly and specifically pled retaliation against River Region and Dr. Yalamanchili.

To refute Dr. Boodoo's contention that he had an employment relationship with River Region and Dr. Yalamanchili, River Region and Dr. Yalamanchili resort to simply ignoring Dr. Boodoo's well-pled allegations and the evidence that directly supports those allegations. As Dr. Boodoo explained in his opening brief, paragraph 140 of the amended complaint, which is incorporated by reference into the retaliation count via paragraph 273, alleges that he was hired "by Defendant Dr. Yalamanchili—through Yalamanchili's entities River Region and Alabama Psychiatry." Boodoo Br. at 44. Yet River Region and Dr. Yalamanchili pretend that this allegation does not exist.

Similarly, River Region and Dr. Yalamanchili insist that this Court must close its eyes to a document that their related entity—Alabama Psychiatry—filed in a

---

[7] *Weiland* identifies an additional type of shotgun pleading—one that does not separate into a different count each cause of action or claim for relief (792 F.3d at 1322–23)—but no Appellee contends that this type of shotgun pleading is at issue here.

related case *showing* that, in fact, Dr. Boodoo's employment agreement stated that he was employed by "River Region Psychiatry Associates, LLC, dba Alabama Psychiatry LLC." *Id.* at 44–45. River Region and Dr. Yalamanchili's desperation to avoid the plain language of Dr. Boodoo's employment agreement only reinforces the conclusion that they have an employment relationship with them.

And River Region and Dr. Yalamanchili do not even attempt to address the various reasons why they can still be liable under § 3730(h) even if they did not have an employment relationship with Dr. Boodoo, as Dr. Boodoo explained in detail in his opening brief. Boodoo Br. at 45–47. Instead, River Region and Dr. Yalamanchili argue that Dr. Boodoo "failed to state a retaliation claim." River Region Br. at 51. But the district court already determined that Dr. Boodoo *did* state a retaliation claim—at least against Alabama Psychiatry. Doc. 69 at 38–40. So if River Region and Dr. Yalamanchili have an employment relationship with Dr. Boodoo too, then the same allegations that plausibly established a retaliation claim against Alabama Psychiatry plausibly establish a retaliation claim against River Region and Dr. Yalamanchili. Regardless, even if this Court were inclined to agree with River Region and Dr. Yalamanchili's assertions, it should still remand to the district court to analyze the sufficiency of Dr. Boodoo's retaliation allegations against River Region and Dr. Yalamanchili in the first instance. *See, e.g.*, *Hart v. Hodges*, 587 F.3d 1288, 1300 (11th Cir. 2009) ("As this issue was raised but not decided in the district

court, we think it best to allow the district court to address it in the first instance on remand.”).

**CONCLUSION**

For these reasons, and those set forth in Dr. Boodoo’s opening brief, this Court should reverse the district court’s dismissal order and remand for further proceedings.

Dated: July 30, 2025


*/s/ Aaron M. Steeg*
Benjamin P. Bucy
Chloé M. Chetta
Aaron M. Steeg
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.

James F. Barger, Jr.
J. Elliott Walthall
FROHSIN BARGER & WALTHALL

*Attorneys for Appellant Ramnarine Boodoo*

## Certificate of Compliance

1. This document complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,220 words.

2. This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Aaron M. Steeg*
Aaron M. Steeg

## Certificate of Service

I certify that on July 30, 2025, I electronically filed the foregoing brief with the Clerk of Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all parties in the case who are registered through CM/ECF.

*/s/ Aaron M. Steeg*
Aaron M. Steeg